[No. D012412. Fourth Dist., Div. One. Dec. 21, 1990.]

SELECT INSURANCE COMPANY et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
MILLWOOD A. CUSTER et al., Real Parties in Interest.

---

### COUNSEL

Sedgwick, Detert, Moran & Arnold, Roger W. Sleight, Bruce D. Celebrezze, Graziella Walsh Coggan, McInnis, Fitzgerald, Rees, Sharkey & McIntyre, James A. McIntyre and Kathleen Furness for Petitioners.

No appearance for Respondent.

Churchill, Kaplan & Roberts, Robert J. Kaplan, Hainline & Williams and Forrest A. Hainline III, for Real Parties in Interest.

---

### OPINION

**BENKE, Acting P. J.**—Select Insurance Company and Insurance Company of the Pacific Coast (insurers) seek extraordinary relief after the court partially granted a motion for summary adjudication of issues brought by real parties Canine Eye Registration Foundation, Inc., Dolly B. Trauner, individually and as executrix of the estate of Lawrence M. Trauner

(collectively CERF). The insurers claim the court erred by finding (1) the insurers had a duty to defend CERF's adversary, Millwood A. Custer, for antitrust violations and abuse of process in an underlying federal district court action brought by Custer and various veterinarians, and (2) the insurers could not utilize the defense of lack of notice.

We find the insurers' denial of coverage did not necessarily mean they would have refused to provide a defense had they received timely notice. Because the insurers' denial of coverage was consistent with a claim they had been prejudiced by the delay, the trial court erred in determining the insurer could not rely on Custer's lack of notice. Because the notice defense, if established, might also have relieved the insurer of its duty to defend, the trial court also erred in determining the insurer had a duty to defend.

### FACTUAL AND PROCEDURAL BACKGROUND

On October 31, 1979, Custer sued CERF in federal district court, alleging antitrust violations by CERF in its registry of dogs free of hereditary eye diseases. CERF counterclaimed on January 28, 1980, for antitrust violations and abuse of process, alleging Custer sought to destroy the registry through boycotts and sham litigation. On November 17, 1981, the court entered a partial final judgment under rule 54(b) of the Federal Rules of Civil Procedure, dismissing all of Custer's claims against CERF.[1] The court declared a mistrial on CERF's counterclaims because the marshal inadvertently sent "counsel only" transcripts to the jury room.

The court granted CERF's motion for summary judgment on the antitrust counterclaim on February 21, 1984, finding Custer had violated the Sherman Act and that the lawsuit was a sham brought to further an overall scheme to violate antitrust laws.[2] The court awarded $1,250,681.90 in damages.

Custer notified the insurers of the antitrust suit on June 18, 1984, and requested a defense and indemnity. On August 6, 1984, the insurers declined to defend, claiming the policy did not cover the acts as alleged and Custer's late notice caused them severe prejudice.[3] The insurers filed a

---

[1] Affirmed on May 3, 1983, *Rickards* v. *Canine Eye Registration Foundation, FDTN, Inc.* (9th Cir. 1983) 704 F.2d 1449, cert. denied, 464 U.S. 994 [78 L.Ed.2d 683, 104 S.Ct. 488].

[2] Affirmed on February 27, 1986, *Rickards* v. *Canine Eye Registration Foundation* (9th Cir. 1986) 783 F.2d 1329. While the district court held the boycott was not a violation of section 1 of the Sherman Act under either a per se or rule of reason analysis, it affirmed the trial court's finding the baseless antitrust lawsuit was a violation.

[3] Custer's policy specifically included coverage of malicious prosecution claims. On August 24, 1984, CERF filed a malicious prosecution and negligent infliction of emotional distress claim in state court against Custer. Custer tendered the claim to the insurers and was

complaint for declaratory relief and breach of the covenant of good faith and fair dealing against Custer on October 15, 1984. Later the insurers added CERF as a defendant.

On February 6, 1987, the district court granted CERF's motion for partial summary judgment on the issue of Custer's liability for abuse of process. Custer then stipulated to a judgment of $2,450,000 in CERF's favor on the abuse of process claim. The stipulated judgment was entered September 29, 1988. CERF agreed not to execute on any judgment in return for Custer's assignment of his causes of action against the insurers to CERF.

On March 10, 1990, CERF moved for summary adjudication of six issues in the declaratory relief action. The fourth and sixth issues, the subject of this petition, were framed as:

"4. [The insurers] had a duty to defend the CERF Parties' antitrust and abuse of process counterclaims;

". . . . . . . . . . . . . . . . . . . . .

"6. [The insurers] may not attempt to defeat coverage based on its claimed lack of notice."

Relying on *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168], the court granted issue number four, finding "An insurer's duty to defend is much broader than the duty to indemnify. The disputed nature of i) the scope of coverage pursuant to the policies, and ii) the effective dates of the policies, and iii) the applicability of exclusions under the policies, gives rise to the 'potential' of liability under the policies."

The court also granted issue number six, stating "Once an insurer denies liability under a policy which it has issued, the insurer waives any claim that the notice provisions of the policy have not been complied with (*CNA Cas. of Calif.* v. *Seaboard Surety Co.* (1986) 176 Cal.App.3d [598], 617 [222 Cal.Rptr. 276].)"

The insurers petitioned for extraordinary relief. We issued the order to show cause and calendared argument.

---

defended under a reservation of rights. The insurers intervened and eventually obtained a dismissal with prejudice for Custer on April 24, 1989.

## Discussion

## I

Because we believe our disposition of issue number six controls disposition of issue number four, we turn first to the insurer's right to rely on Custer's lack of notice.

■ In order to rely on an insured's lack of notice an insurer bears the burden of demonstrating that it was substantially prejudiced. (*Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 881-883 [151 Cal.Rptr. 285, 587 P.2d 1098]; see also *Campbell* v. *Allstate Ins. Co.* (1963) 60 Cal.2d 303, 305-307 [32 Cal.Rptr. 827, 384 P.2d 155].) In *Clemmer* the insured shot and killed his employer. The employer's heirs brought a wrongful death action against the insured and obtained a default judgment against the insured in the amount of $2,003,421. The heirs then brought an action against the insurer, alleging it was obligated to satisfy the judgment. The insurer had declined coverage on the grounds its insured's acts were willful and hence under the terms of Insurance Code section 533 could not be covered. At trial the insurer also argued that the insured's failure to provide it with notice of the action relieved it from its obligation under the policy.

The trial court rejected the insurer's notice defense. It found the insurer was aware of the killing within a week of its occurrence, and that, although the insurer received no notice the wrongful death action had been commenced, the heirs had notified the insurer of the default hearing before it was held. The trial court further found that two weeks after the hearing the insurer advised its insured that it would not cover the claim. In upholding the trial court's ruling the Supreme Court stated: "The fundamental defect in [the insurer's] position here is that it has at no time suggested that, in the event that a timely tender of the defense of the wrongful death action had been made, it would have undertaken the defense. The record clearly suggests to the contrary. In these circumstances, applying the rule of the *Campbell* case, we must conclude that [the insurer] has failed to show that it sustained substantial prejudice as a result of the insured's failure to provide it with notice and tender. Accordingly, its defense based upon this failure was properly rejected." (*Clemmer* v. *Hartford Insurance Co.*, *supra*, 22 Cal.3d at p. 883, fn. omitted.)

The result reached in *Clemmer* is consistent with a long line of California authority. (See, e.g., *Grant* v. *Sun Indemnity Co.* (1938) 11 Cal.2d 438, 440-441 [80 P.2d 996]; *CNA Casualty of California* v. *Seaboard Surety Co.*, *supra*, 176 Cal.App.3d at p. 617; *Eichler Homes, Inc.* v. *Underwriters at Lloyd's London* (1965) 238 Cal.App.2d 532, 539 [47 Cal.Rptr. 843];

*Lagomarsino* v. *San Jose etc. Title Ins. Co.* (1960) 178 Cal.App.2d 455, 460 [3 Cal.Rptr. 80]; *Comunale* v. *Traders & General Ins. Co.* (1953) 116 Cal.App.2d 198, 202 [253 P.2d 495]; *Kennedy* v. *American Fidel. & Cas. Co.* (1950) 97 Cal.App.2d 315, 317 [217 P.2d 457].) As in *Clemmer*, in each of these cases an insurer had denied any coverage under its policy and later argued that in addition its insured had failed to satisfy either the notice, tender or cooperation provisions of its policy. In each case the court held the insurer could not rely on the insured's failure to meet a condition of the policy when it had claimed that in any event no coverage was available under the policy. In *Comunale* v. *Traders & General Ins. Co., supra,* 116 Cal.App.2d at pages 202-203, the court articulated the rule which has been repeated in later cases: "The law is established that where an insurance company denies liability under a policy which it has issued, it waives any claim that the notice provisions of the policy have not been complied with."

We believe that in applying the rule set forth in *Comunale*, it is important to remember the rationale set forth in *Clemmer*. In our view *Clemmer* makes it clear an insurer is not allowed to rely on an insured's failure to perform a condition of a policy when the insurer has denied coverage because the insurer has, by denying coverage, demonstrated performance of the condition would not have altered its response to the claim. (See also *Havas* v. *Atlantic Ins. Co.* (1980) 92 Nev. 586 [614 P.2d 1, 2].)

 With these limitations on an insurer's right to rely on the notice provisions in its policy in mind, we reach the somewhat unique facts presented in this record. The record is clear that in its August 1984 letter to Custer's counsel the insurer both denied coverage on the grounds CERF's claims were outside the scope of the policy and asserted Custer's failure to provide the company with notice of CERF's claims. Were we to apply the rule stated in *Comunale* without reference to the rationale which supports it our task would be easy: we would hold that by denying coverage the insurer lost its right to rely on the lack of notice. However the problem is not so simple. As in *Clemmer*, we must determine whether the denial of coverage demonstrates that the insurer would not have acted any differently had it received timely notice. As we explain, on this record it is not possible to make such a determination.

In this case Custer gave the insurer no notice of CERF's claims against him until four years after they had been filed and three months after CERF had been awarded $1,250,681.90 in damages. The district court had arrived at that damage figure by awarding CERF the $416,893.99 in attorneys fees CERF had spent in defending Custer's antitrust suit and trebling that amount under the provisions of 15 United States Code section 15.

Although CERF may argue that because Custer was vigorously represented in the district court proceeding earlier notice to the insurer would not have improved the defense he mounted, CERF ignores the fact Custer's lack of notice may have deprived his insurer not just of the opportunity to pay for Custer's defense but of the opportunity to settle the counterclaim for considerably less. (See *Northwestern Title Security Co.* v. *Flack* (1970) 6 Cal.App.3d 134, 143 [85 Cal.Rptr. 693].) Here a trier of fact could find that since CERF's damages were restricted to its attorneys fees, the insurers could extricate themselves from this dispute for far less than the partial judgment entered by the district court had they received notice of the claim before the district court's judgment was entered; a trier of fact could find that once the judgment, and in particular the district court's decision to treble damages, was entered, the opportunity to settle for any amount less than the judgment was forever lost.

■ In this regard we note that in *Maryland Casualty Co.* v. *Imperial Contracting Co.* (1989) 212 Cal.App.3d 712, 720-721 [260 Cal.Rptr. 797], this court confirmed that an insurer may accept a tender of defense, reserve its right to dispute coverage, and then, over its insured's objection, settle with the third party claimant without giving up its right to pursue its insured for the amount paid in settlement. ■ ■■■■ In our view the record here suggests the insurers may have been substantially prejudiced by the delayed notice because, as a practical matter, they may have been deprived of the opportunity to exercise the rights we described in *Maryland Casualty Co.* v. *Imperial Contracting Co.*[4] We emphasize, however, that at trial the insurers will bear the burden of proof on this issue. (*Northwestern Title Security Co.* v. *Flack, supra,* 6 Cal.App.3d at p. 143.)

■ In this context the fact insurers denied coverage at the same time they asserted the lack of notice is of little moment. The fact that after judgment had been entered, and the opportunity to settle apparently lost, the insurers chose to assert both defenses to coverage and lack of notice

---

[4] We also note CERF contends that because Select participated in the defense of some of the veterinarians Custer had sued, Select had actual notice of the claims CERF had made against him. We disagree. Select's participation in the defense of Custer's adversaries does not necessarily establish Select was aware Custer would look to it for a defense or indemnity. In this regard the facts in this case are in marked contrast to the situation in *Samson* v. *Transamerica Ins. Co.* (1981) 30 Cal.3d 220, 237-240 [178 Cal.Rptr. 343, 636 P.2d 32]. There, prior to entry of a judgment against its insured, the insurer denied coverage for an accident, was aware a lawsuit had been filed against its insured, and set up a loss reserve. Under those circumstances the court had no difficulty in rejecting the insurer's argument that because no formal demand for a defense had been made it had no duty to defend. Unlike Select, the insurer in *Samson* was aware prior to entry of the judgment it disputed that one of the parties would look to it for coverage and nonetheless it took no action to defend either its interests or its insured's interests. In contrast here there is no evidence which suggests Select was aware Custer would rely on it prior to the June 18, 1984, letter.

does not foreclose the possibility that had the insurers received notice before judgment they would have attempted to settle the case, even over Custer's objection. This situation is in marked contrast to *Clemmer,* where the insurer had asserted lack of coverage long before it raised the lack of notice. As we have seen, in the latter situation the insurer cannot establish prejudice because his conduct demonstrates that notice would not have altered his response to the claim.

Because the insurers may be able to show they were prejudiced by Custer's lack of notice the trial court erred in granting CERF's request for summary adjudication of issue number six.

## II

This brings us to issue number four, Select's duty to defend. ■ We, of course, are aware of the authority which makes it plain an insurer's duty to defend is broader than its duty to indemnify (*Gray* v. *Zurich Insurance Co.,* *supra,* 65 Cal.2d at pp. 276-277) and may require the defense of claims for which indemnity will not be available. (*Ohio Casualty Ins. Co.* v. *Hubbard* (1984) 162 Cal.App.3d 939, 946-948 [208 Cal.Rptr. 806].) We also note that the duty to defend may include the duty to prosecute an appeal. (*Cathay Mortuary (Wah Sang)* v. *United Pacific Ins.* (N.D. Cal. 1984) 582 F.Supp. 650, 656-657.)

■ However, if successful, the insurers' notice defense could prevent any recovery under the policy. (See *Dalzell* v. *Northwestern Mutual Ins. Co.* (1963) 218 Cal.App.2d 96, 103 [32 Cal.Rptr. 125].) Thus, before Custer is entitled to summary adjudication on the duty to defend, the notice defense must be adjudicated. Since, as we have seen, that is not possible on this record, the trial court erred in granting CERF summary adjudication on issue number four.

## DISPOSITION

Let a writ issue directing the superior court to vacate the portion of its order granting summary adjudication on issues four and six and enter a new order denying the same.

Froehlich, J., and Nares, J., concurred.