**M.D. SASS INVESTORS SERVICES, INC., a corporation, and M.D. Sass Associates, Inc., a corporation, Plaintiffs,**

v.

**RELIANCE INSURANCE COMPANY OF ILLINOIS, a corporation, Defendant.**

No. C 92–0933 SC.

United States District Court, N.D. California.

Nov. 6, 1992.

James S. Russell, Kindel & Anderson, San Francisco, CA, for plaintiffs.

David A. Tartaglio, Musick, Peeler & Garrett, Los Angeles, CA, for defendant.

ORDER PARTIALLY GRANTING SUMMARY JUDGMENT; DENYING SASS'S REQUEST FOR LEAVE TO AMEND; DENYING SASS'S MOTION TO STAY PROCEEDINGS

CONTI, District Judge.

## I. INTRODUCTION

Plaintiffs, M.D. Sass Investment Services, et al. ("Sass"), brought suit in this court against its liability insurer, defendant Reliance Insurance Company of Illinois ("Reliance"). Reliance has denied coverage under its policy and refused to defend Sass in a series of lawsuits (the "Underlying Lawsuits"). Sass is seeking declaratory relief obligating Reliance to defend and cover Sass in the Underlying Lawsuits. Sass is also seeking damages for breach of contract, bad faith, breach of fiduciary duty, fraud, and negligent misrepresentation.

Sass now moves the court for partial summary judgment, asking for a declaration that Reliance is obligated to defend Sass in the Underlying Lawsuits. Reliance has filed a cross-motion for partial summary judgment on Sass's claims of bad faith, breach of fiduciary duty, fraud, and negligent misrepresentation. Sass also has filed a motion for leave to amend its complaint, and a motion to stay the proceedings on the coverage issue pending resolution of the Underlying Lawsuits.

## II. FACTS

### A. *The Underlying Lawsuits*

Sass is a registered investment advisor under the Investment Advisers Act of 1940. Beginning in 1986, Sass began purchasing taxable municipal bonds (the "Bonds"), for several of its clients. These bonds were triple A rated at the time, and also were backed by guaranteed investment contracts issued by Executive Life Insurance Company ("Executive Life"). In April of 1991, however, the California Department of Insurance placed Executive Life into receivership, and the Bonds went into default soon thereafter.

In October, 1991, Sass was sued by one of its pension fund clients, the Alameda County Employees' Retirement Association

("ACERA"). ACERA is seeking damages of approximately $17,000,000 for its losses on the Bonds. Four other pension fund clients have filed similar actions against Sass in other federal courts around the country. These actions make up the Underlying Lawsuits.[1] The Multidistrict Panel on Litigation has consolidated all of the Underlying Lawsuits, including the one by ACERA, for pretrial proceedings in the Eastern District of Louisiana.

### B. *The Insurance Policy*

Sass brought this action against Reliance seeking, among other things, a declaration that it is covered under the terms of its Investment Advisors Liability Insurance Policy (the "Policy"). The Policy was issued on December 27, 1988, and was renewed for a one year term on December 27, 1989, and December 27, 1990. Under the Policy, Reliance agreed:

> To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages resulting from any claim(s) first made against the Insured during the Policy Period ... for any Wrongful Act of the Insured or of any other person for whose actions the Insured is legally liable, but only if such Wrongful Act first occurs during or prior to the policy period.

Reliance also agreed "to defend any claim made against the Insured seeking damages on account of a Wrongful Act, even if such claim is groundless, false, or fraudulent."

The Policy also includes a "prior knowledge" exclusion clause. Exclusion E of the Policy provides that the policy does not apply "to any Wrongful Act committed prior to the beginning of the Policy Period, *if on or before the inception date of this Policy the Insured knew or could have*

reasonably *known that such Wrongful Act could lead to a claim."* (Emphasis supplied.)

### C. *Reliance's Denial of Coverage*

Reliance does not contend that the Underlying Lawsuits are not covered under the terms of the Policy. Instead, Reliance bases its denial of coverage on Exclusion E, stating that "[t]he basis of such disclaimer here was that the Plaintiffs had knowledge of a wrongful act, or wrongful acts, prior to the inception of [the 1991] renewal policy, which might result in such claims being made against them." (Reliance's Answer to Sass's Complaint, ¶ 43.) Reliance argues that its disclaimer was justified for two reasons: First, according to Reliance, Sass knew or should have known during late 1990 about Executive Life's financial difficulties and the Bonds' market decline. Second, in June, 1990, Sass received a letter from a client threatening to hold it responsible for any losses from the Bonds,[2] which Reliance claims put Sass on notice of other possible claims.

### D. *This Court's Previous Order Denying Summary Judgment*

On June 18, 1989, this court entered an Order re Summary Judgment (the "Order"). The court addressed cross-motions for summary judgment by Sass and Reliance on the issue of whether Reliance is liable to indemnify Sass under the Policy.

The court construed, as a matter of law, the term "inception date" in Exclusion E as referring to the renewal date of the Policy and not to the date of the original Policy. Thus, the court concluded, "[t]he Underlying factual issue on which Reliance's liability for coverage depends is whether Sass

---

**1.** The Underlying Lawsuits are:

   1. *Alameda County Employees' Retirement Association v. M.D. Sass Investors Services, Inc. and Hugh R. Lamle,* United States District Court, N.D.Cal., Case No. C 91–3290;

   2. *Cheskin v. M.D. Sass Associates, Inc. et al.,* United States District Court, S.D.N.Y., No. 91 Civ. 6256;

   3. *Coleman v. M.D. Sass Associates, Inc. et al.,* United States District Court, S.D.N.Y., No. 91 Civ. 7478;

   4. *Muller v. M.D. Sass Associates, Inc. et al.,* United States District Court, D.N.J., No. 91–3762;

   5. *Weiland v. M.D. Sass Associates, Inc. et al.,* United States District Court, N.D.Ill., No. 91C7636.

**2.** This client is not a plaintiff in any of the Underlying Lawsuits, and the letter in question was formally withdrawn.

knew or could reasonably have known of Wrongful Acts prior to December 27, 1990." (Order, at 16). The court stated that "[t]he answer to this question is one of fact which must be reserved for the trier of fact." The court held that:

> When the evidence is viewed in the light most favorable to Sass, a reasonable fact finder could conclude that Sass could not have reasonably known of Wrongful Acts, and Reliance would consequently be liable for coverage under the Policy
>
> . . .
>
> When viewed the opposite way, a fact finder could easily conclude that Sass was on sufficient notice of potential claims against it that coverage is properly disclaimed pursuant to Exclusion E.

(Order, at 17.) The court therefore denied both motions for summary judgment.

The court also addressed Sass's argument that Reliance was estopped from denying coverage. Sass based its estoppel theory on alleged representations by Reliance in its renewal application that Sass need not disclose certain prior wrongful acts, which then turned out to the basis for Reliance's disclaimer under Exclusion E. The court found, however, that:

> In this case ... Reliance never made an affirmative representation that prior Wrongful Acts, of which Sass knew or could reasonably be expected to know, were covered. Certainly the renewal application made no such representation.

(Order, at 14.) Accordingly, the court held that "the first element of estoppel, a material misrepresentation, is not proved." (Order, at 15.)

### E. *The Motions Currently Before the Court*

Sass now moves for summary judgment on its claim for declaratory relief, seeking a declaration that Reliance has a duty to defend Sass in the Underlying Lawsuits pending the resolution of the coverage dispute. Reliance has filed a cross-motion seeking summary judgment on Sass's claims of bad faith, breach of fiduciary duty, fraud, and negligent misrepresentation. Both parties argue that this court's

Order mandates that their motions be granted.

Sass has also filed two other motions. First, it seeks leave to amend the complaint, which Sass contends would eliminate the need to decide Reliance's motion. Second, in the event Sass's motion for declaratory relief on Reliance's duty to defend is successful, Sass moves the court to stay the proceedings on the coverage issue pending the outcome of the Underlying Lawsuits.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only when there is no genuine issue of material fact or when, viewing the evidence in the light most favorable to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed.R.Civ.P. 56(c); *Jung v. FMC Corp.*, 755 F.2d 708, 710 (9th Cir. 1985). The party moving for summary judgment has the burden of proving the absence of any genuine issue of material fact that would allow a judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

Once the moving party demonstrates the absence of any genuine issue of material fact, however, the burden shifts to the non-moving party to produce evidence sufficient to support a jury verdict in his favor. *Id.* at 255, 106 S.Ct. at 2513–14. To meet this burden, the nonmoving party must go beyond the pleadings and show "by her own affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

In addition, to withstand a motion for summary judgment, the non-moving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Liberty Lobby*, 477 U.S. at 250, 106 S.Ct. at 2511.

## IV. DISCUSSION

### A. *Sass's Motion for Summary Judgment*

#### 1. Choice of Law

In an action brought under diversity jurisdiction, the district court applies the choice of law analysis of the state in which it sits. *Liew v. Official Receiver & Liquidator,* 685 F.2d 1192, 1195 (9th Cir.1982) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). The court is to decide state law issues as would the Supreme Court of the forum state. *C.I.R. v. Estate of Bosch,* 387 U.S. 456, 464–65, 87 S.Ct. 1776, 1782–83, 18 L.Ed.2d 886 (1967). The California Supreme Court uses a "governmental interests" test, which requires the court "to find the proper law to apply based upon the interests of the litigants and the involved states." *Offshore Rental Co. v. Continental Oil Co.,* 22 Cal.3d 157, 161, 148 Cal. Rptr. 867, 583 P.2d 721 (1978). However, there is no conflict in applying California law to a dispute if the same outcome would be reached under the law of each of the states involved. *See Hurtado v. Superior Court,* 11 Cal.3d 574, 579–80, 114 Cal.Rptr. 106, 522 P.2d 666 (1974).

The parties here have not fully briefed this court on the choice of law issue. They seem to be in agreement, however, that either California or New York law applies to the issue of Reliance's duty to defend Sass in the Underlying Lawsuits. As is shown below, the result would be the same under either California or New York law.

#### 2. An Insurer's Duty to Defend

■ It is well settled that California law obligates an insurer to provide its insured with a defense against claims that create a potential for indemnity. "The carrier must defend a suit which *potentially* seeks damages within the coverage of the policy." *Gray v. Zurich Ins. Co.,* 65 Cal.2d 263, 275, 54 Cal.Rptr. 104, 419 P.2d 168 (1966) (emphasis in original). The insurer's duty to defend is thus much broader than the duty to indemnify. One California court has held that:

[T]he duty to defend is so broad that as long as the complaint contains language creating the potential for liability ... the insurer must defend an action against its insured even though it has independent knowledge of facts not in the pleadings that indicate that claim is *not* covered. *CNA Casualty of California v. Seaboard Surety Co.,* 176 Cal.App.3d 598, 606, 222 Cal.Rptr. 276 (1986). This case could be read as holding that under California law, an insurer can never rely on extrinsic evidence to avoid the duty to defend.

Other California cases have allowed an insurer to rely on extrinsic evidence to avoid the duty to defend, but these cases demonstrate that an insurer can avoid the duty to defend only when it is conclusively proven that there is no potential for coverage. *See, e.g., Saylin v. California Ins. Guarantee Ass'n,* 179 Cal.App.3d 256, 266, 224 Cal.Rptr. 493 (1986) (discovery showed conclusively that act did not occur within policy period); *Fire Ins. Exchange v. Jiminez,* 184 Cal.App.3d 437, 442, 229 Cal.Rptr. 83 (1986) (uncontradicted evidence showed that policy did not cover property where the accident occurred).

Similarly, the New York courts have recognized that the duty to defend is broader than the duty to indemnify. New York law requires an insurer to defend its insured in a lawsuit if there is a "reasonable possibility that the insured may be held liable for some act or omission covered under the policy." *Fitzpatrick v. American Honda Motor Co., Inc.,* 78 N.Y.2d 61, 571 N.Y.S.2d 672, 677, 575 N.E.2d 90, 95 (1991).

*Villa Charlotte Bronte, Inc. v. Commercial Union Ins. Co.,* 64 N.Y.2d 846, 487 N.Y.S.2d 314, 476 N.E.2d 640 (1985), is almost directly on point. In that case an insured moved for partial summary judgment that his insured was obligated to defend him in a lawsuit. The insurer opposed the motion based on the alleged applicability of an exclusion clause in the policy. The New York Court of Appeals reversed the trial court's denial of summary judgment, holding that "[t]he insurer could only be excused from defending [its insured] because of the language of the policy exclu-

sion if it could establish, as a matter of law, that there is no possible factual or legal basis on which the insurer might eventually be obligated to indemnify him." 487 N.Y.S.2d at 315, 476 N.E.2d at 641.

The findings in this court's previous Order, then, obligate Reliance to defend Sass in the Underlying Lawsuits. When this court denied Reliance's previous motion for summary judgment, it necessarily held that Reliance could not show conclusively that Sass had knowledge of any prior wrongful acts. There remains a possibility that the jury will find that Sass had no such knowledge, making Reliance liable under the Policy. As long as this potential for liability exists, Reliance must defend Sass in the Underlying Lawsuits.

■ Reliance contends that it is not obligated to defend Sass because Exclusion E, in Reliance's terms, is a "policy defense," as opposed to a "coverage defense." According to Reliance, an insurer possesses a coverage defense when the acts complained of do not fall within the insurance coverage, and a policy defense when the insured by some act or omission has harmed the relationship between the insurer and the insured. Reliance holds out an "insufficient notice" defense—that is, where the insured fails to give the insurer proper notice of a claim—as an example of a policy defense. It further claims that the "prior knowledge" language in Exclusion E should be seen as a policy defense, not a coverage defense.

Reliance argues that there is never a duty to provide an interim defense pending the adjudication of a policy defense. For support, Reliance cites the California case of *Select Ins. Co. v. Superior Court*, 226 Cal.App.3d 631, 276 Cal.Rptr. 598 (1990). In that case, the insurer successfully raised an issue of whether its insured had given it proper notice of the claim under the provisions in its policy. The court held that "before [the insured] is entitled to summary adjudication on the duty to defend,

the notice defense must be adjudicated." *Id.* at 639, 276 Cal.Rptr. 598.

The *Select* case, though, makes no mention of the supposed distinction between a "coverage defense" and a "policy defense." In fact, Reliance can point to no case that recognizes this distinction.[3] This court also refuses to recognize such a distinction, for to do so would eviscerate the holding in *Gray*, a seminal case in California insurance law, as well as similar holdings by the courts of New York. *Gray* and its progeny clearly recognize that the insurer has a duty to defend as long as there is *any* potential for liability under the policy.

Moreover, the *Select* case can be distinguished from the case at bar, because compliance with a notice provision in an insurance policy can be seen as a condition precedent to the insurer's duty to defend. In other words, an insured must properly comply with the notice provisions of its policy before the insurer's duty to defend arises. Reliance does not claim that Sass failed to comply with any condition precedent to the Policy. Rather, it relies on Exclusion E, which is by its terms a coverage exclusion. The rationale of *Select* simply does not apply to coverage exclusions.

As noted above, this court has already determined that whether Sass had prior knowledge of any wrongful acts, which would justify Reliance's disclaimer of liability pursuant to Exclusion E, is an issue for the jury. Until that issue is decided, Reliance has a duty to defend Sass in the Underlying Lawsuits. Sass's motion for summary judgment, therefore, is granted, and Reliance is ordered to provide Sass with a defense in the Underlying Lawsuits.

B. *Reliance's Motion for Summary Judgment*

■ Reliance is moving for summary judgment on Sass's claims of bad faith, breach of fiduciary duty, fraud, and negligent misrepresentation. Again, the parties did not brief the court on the choice of law issue. This court believes, however, that

---

**3.** Reliance did call the court's attention to 1A Rowland H. Long, *The Law of Liability Insurance* § 5.01 (1992), but only the most strained reading of that section could possibly support Reliance's position.

the result would be the same under California law as under the law of any of the other interested states. Thus, there is no conflict in applying California law. *Hurtado v. Superior Court,* 11 Cal.3d 574, 579–80, 114 Cal.Rptr. 106, 522 P.2d 666 (1974).

### 1. Sass's Claims of Bad Faith and Breach of Fiduciary Duty

Under California law, an insurer can be held liable in tort for bad faith in refusing to bestow policy benefits. *See Gruenberg v. Aetna Ins. Co.,* 9 Cal.3d 566, 573–74, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973). The insured must prove that the insurer withheld policy benefits without proper cause. *California Shoppers, Inc. v. Royal Globe Ins. Co.,* 175 Cal.App.3d 1, 54–55, 221 Cal. Rptr. 171 (1985).

In addition, an insurer holds itself out as a fiduciary, so a wrongful denial of benefits would be a breach of fiduciary duty. *See Frommoethelydo v. Fire Ins. Exchange,* 42 Cal.3d 208, 215, 228 Cal.Rptr. 160, 721 P.2d 41 (1986).

Reliance argues that this court's findings in its previous Order mandate summary judgment in its favor. The court stated in its Order that "a fact finder could easily conclude that Sass was on sufficient notice of potential claims against it that coverage is properly disclaimed pursuant to Exclusion E." (Order, at 17.) Reliance argues that since it is possible that a jury can find in its favor, it did not act in bad faith as a matter of law. What Reliance fails to note is that when the court made the above statement, it was viewing the evidence in the light most favorable to Reliance. There is no guarantee that the jury will do the same. Moreover, for the purposes of Reliance's motion, this court must do the opposite.

In its previous Order, this court held that whether Reliance had a basis for disclaiming coverage under Exclusion E was a "question· of fact which must be reserved for the trier of fact." (Order, at 17) Viewing the evidence in the light most favorable to Sass, the court held that "a reasonable fact finder could conclude that Sass could not reasonably have known of Wrongful Acts, and Reliance would consequently be liable under the Policy." *Id.* If the jury indeed decides this issue in Sass's favor, they also may decide that Reliance's disclaimer of coverage was without proper cause, or wrongful under the circumstances. This precludes summary judgment for Reliance on Sass's claims of bad faith and Breach of fiduciary duty. As to these claims, Reliance's motion for summary judgment is denied.

### 2. Sass's Claims of Fraud and Negligent Misrepresentation

■ Sass's claim for "fraud and deceit" alleges an intentional misrepresentation by Reliance. Sass also alleges a claim for negligent misrepresentation.

This court found in its previous Order that Reliance had not made any material misrepresentation, and that none could be found in its Policy or in the renewal application. (Order, at 14–15.) This finding is now part of the law of the case. Because an affirmative misrepresentation is a necessary element of Sass's claims of fraud and negligent misrepresentation, Reliance is entitled to summary judgment on these claims.

### C. *Sass's Motion for Leave to Amend*

Sass is seeking leave to amend to allege new bases for the claims addressed in Reliance's motion for summary judgment. Sass claims it is doing so only "out of an abundance of caution." Such caution on the part of Sass is unnecessary.

As to Sass's claims for bad faith and breach of fiduciary duty, its complaint is sufficient to put Reliance on notice of the nature of the claims against it. In the light of this decision and this court's previous Order, the only factual issue left to be decided on Sass's claims for bad faith and breach of fiduciary duty is whether Reliance's denial of coverage was wrongful, or without proper cause. Sass's complaint alleges this adequately.

As to Sass's claims for fraud and intentional misrepresentation, they have been rendered a nullity by this court's previous Order, and Reliance is entitled to partial

summary judgment. *See supra* part IV. B.2. Thus, amendment of the complaint on those two claims would be futile. *See Lockman Foundation v. Evangelical Alliance Mission*, 930 F.2d 764, 772 (9th Cir. 1991) (leave to amend improper if amendment would be futile). Sass's motion for leave to amend is denied.

D. *Sass's Motion to Stay the Proceedings*

■ The court has broad discretion to stay a declaratory judgment proceeding on insurance coverage pending the outcome of the underlying action against the insured. *Terra Nova Ins. Co. Ltd v. 900 Bar, Inc.*, 887 F.2d 1213, 1224–25 (3d Cir.1989). As noted above, this court is ordering Reliance to defend Sass in the Underlying Lawsuits. *See supra* part IV.A.2. Sass now moves to stay the declaratory proceeding on the coverage issue pending resolution of the Underlying Lawsuits.

■ There are no Ninth Circuit cases addressing the issue directly. The Third Circuit, though, has set forth a list of factors for the district court to consider in deciding whether to exercise its discretion. *See Terra Nova*, 887 F.2d at 1224–25. The district court should consider: (1) the likelihood that the declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in the settlement of the uncertainty of obligation; (4) the availability and convenience of other remedies; and (5) whether the same factual question lies at the heart of both the insurance coverage dispute and the underlying action. *Id.; see also Remington Arms v. Liberty Mutual Ins.*, 748 F.Supp. 1057, 1063 (D.Del.1990).

■ Obviously, a declaratory judgment in this case will resolve the uncertainty of obligation between Sass and Reliance. A declaration either for or against Sass would be extremely helpful to the parties in guiding their future course of conduct. *See Remington Arms*, 748 F.Supp. at 1062.

With respect to the convenience of the parties, Sass would prefer to avoid expending effort now to establish its right to

indemnification, because Reliance is obligated to defend it in the meantime in the Underlying Lawsuits. On the other hand, it would be extremely unfair to Reliance not to allow it to adjudicate its defense that Sass had prior knowledge of the claims that led to the Underlying Lawsuits. The court in *Remington Arms* resolved this issue in favor of the insurer, on the theory that where it is the insured that brought the declaratory action in the first place, "the scales tip in favor of [the insured's] desire to go forward on the indemnification claims." *Id.* This reasoning is applicable here. When Sass brought this action it immediately moved for summary judgment on the indemnification issue, which was denied because the court found a triable issue of fact in Reliance's defense. Now, Sass is turning around and requesting a stay of the same proceeding, attempting to turn its temporary victory on the duty to defend issue into a permanent one. This court believes that on the balance, the equities favor allowing Reliance to adjudicate its defense in this declaratory proceeding, instead of waiting for the results of the Underlying Lawsuits.

The third factor to consider is the public's interest in the settling the uncertainty of the obligation. This obviously cuts in favor of denying the stay requested by Sass. The public, including the plaintiffs in the Underlying Lawsuits, has a substantial interest in knowing whether the ultimate liability, if any, for the Bonds' collapse in the market will fall on Sass or its insurer.

The other remedy at issue—proceeding to trial on the indemnification issue—is more convenient than staying the action, as the parties are currently involved in discovery on this issue. It would be inconvenient to stay these proceedings now, only to have to begin them again, potentially, at a later date.

The final factor for the court to consider is whether it would be required to make factual findings which are also subject to determination in the Underlying Lawsuits. Sass notes that there are many factual issues which are common to this action and

the Underlying Lawsuits. For example, the key issue in the declaratory proceeding is whether Sass had knowledge of any wrongful acts on its part. A finding on this issue certainly would be relevant in the Underlying Lawsuits on the issue of whether Sass breached any duty owed its clients.

Sass contends that if this factual issue is determined adversely to it in this action, the plaintiffs in the Underlying Lawsuits possibly could estop Sass from relitigating it in the Underlying Lawsuits. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979) ("offensive" collateral estoppel by non-party allowed where defendant was party in prior action). Sass is concerned that this would put Reliance in the position of aiding the plaintiffs in the Underlying Lawsuits, by litigating crucial issues for them in the declaratory proceeding. Because Reliance has a duty to defend Sass from these very same plaintiffs, Reliance has a conflict of interest. Sass contends that this warrants a stay of the declaratory proceeding.

This potential conflict of interest, however, most likely will not arise. It is settled law that when an insurer has a conflict of interest with its insured based on possible non-coverage under the policy, the insurer must defend by paying the insured's attorneys' fees for an independent counsel of the insured's choice. *See San Diego Fed. Credit Union v. Cumis Ins. Soc.*, 162 Cal. App.3d 358, 361, 208 Cal.Rptr. 494 (1984). Thus, Reliance is not necessarily put in the position of arguing one side of the factual issues in this action, and then actually litigating the opposite side in the Underlying Lawsuits. Reliance needs only to pick up the tab for Sass's defense. It does not have to actually participate in the Underlying Lawsuits, and, in fact, it must not do so if any conflict of interest exists.

Moreover, the mere possibility of collateral estoppel does not justify a stay of the declaratory proceeding. Sass is fully aware of the stakes in this litigation, so it has every incentive to litigate the factual issues to the best of its ability. If Sass does so and happens to lose, it cannot claim to be prejudiced in any sense by being precluded from litigating the same issues in the Underlying Lawsuits.

Sass also contends that a stay is necessary to protect its reasonable expectations under the Policy. Sass claims that it could not reasonably expect to face the superior resources of its insurer in this action, particularly when it paid for a policy obligating Reliance to defend it in the Underlying Lawsuits. Though the court is sympathetic to this argument, it cannot be said that an insured reasonably expects that its insurer will not litigate a possible defense against it, if such defense has a factual basis.

On the balance, this court finds that the above factors do not justify staying the declaratory proceeding on the coverage issue. Sass's motion to stay the proceeding is denied.

## V. CONCLUSION

In accordance with the foregoing, it is hereby ORDERED that:

Sass's motion for partial summary judgment is GRANTED. Reliance is hereby ORDERED to provide Sass with a defense in the Underlying Lawsuits.

Reliance's motion for partial summary judgment is GRANTED in part and DENIED in part:

As to Sass's claims for bad faith and breach of fiduciary duty, Reliance's motion for summary judgment is DENIED;

As to Sass's claims for fraud and negligent misrepresentation, Reliance's motion for summary judgment is GRANTED.

Sass's motion for leave to amend is DENIED.

Sass's motion to stay the declaratory proceeding on the indemnification issue is DENIED.

IT IS SO ORDERED.