OMEGA PRODUCTS CORPORATION, a California corporation and subsidiary of Opal Service, Inc., a California corporation, Plaintiff—Appellant,

v.

LIBERTY MUTUAL INSURANCE COMPANY, a corporation, et al., Defendants—Appellees.

No. 01–55818.

D.C. No. CV–98–01062–GLT.

United States Court of Appeals, Ninth Circuit.

Argued May 9, 2002.

Resubmitted July 9, 2002.

Decided Nov. 1, 2002.

Before KLEINFELD and GRABER, Circuit Judges, and BOLTON,* District Judge.

MEMORANDUM**

Appellant Omega Products Corporation (Omega) manufactures building supplies,

---

* The Honorable Susan R. Bolton, United States District Judge for the District of Arizona, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

including Akroflex, which is a line of acrylic-based exterior coatings used in residential and commercial construction. Appellee Liberty Mutual Insurance Company (Liberty) issued a commercial general liability (CGL) policy to Omega.

Omega sued a company called ATCO. ATCO counterclaimed, alleging that Omega had altered the Akroflex formula and improperly warranted and sold defective Akroflex to ATCO, which it in turn had supplied to others.

Omega informed Liberty of the ATCO counterclaim, seeking coverage under the CGL policy. Liberty denied coverage. Omega sued Liberty in district court. Eventually, the court dismissed Omega's Fourth Amended Complaint without further leave to amend.

Omega contends that its allegations, if proven, will show that the information provided in its tenders of defense was sufficient to trigger Liberty's duty to defend. Under California law, an insurer has a duty to defend its insured against all claims that potentially seek damages covered by the policy, even if no liability ultimately results from those claims. *Montrose Chem. Corp. of Cal. v. Superior Court,* 6 Cal.4th 287, 24 Cal.Rptr.2d 467, 861 P.2d 1153, 1157 (1993); *Gray v. Zurich Ins. Co.,* 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168, 177 (1966). In conducting the duty-to-defend analysis, the court considers "all facts known by the insurer at the inception of the third party lawsuit." *Barnett v. Fireman's Fund Ins. Co.,* 90 Cal.App.4th 500, 108 Cal.Rptr.2d 657, 662 (2001) (citing *Montrose,* 24 Cal.Rptr.2d 467, 861 P.2d at 1157). " '[T]he ultimate question is whether the *facts* alleged do fairly apprise the insurer that plaintiff is suing the insured upon an occurrence which, if his allegations are true, gives rise to liability of insurer to insured under the terms of the policy.' " *Aim Ins. Co. v.*

*Culcasi,* 229 Cal.App.3d 209, 280 Cal.Rptr. 766, 770 (1991) (quoting *Gray,* 54 Cal.Rptr. 104, 419 P.2d at 176 n. 15). "Any doubts as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Montrose,* 24 Cal. Rptr.2d 467, 861 P.2d at 1160. In our recent decision in *Anthem Electronics, Inc. v. Pacific Employers Insurance Co.,* 302 F.3d 1049, 1056 (9th Cir.2002), we noted that under California law

> insurers have a heavy burden when seeking summary judgment on the duty to defend. As noted, an insurer must defend its insured so long as the complaint at issue *raises the possibility* that the insured will be liable for losses covered by its policy. Put starkly by the California Supreme Court, the insurers here are relieved of their duty to defend only if [the third party's] complaint *"can by no conceivable theory raise a single issue which could bring it within the policy coverage."* *Montrose,* [861 P.2d at 1160] (quoting *Gray*[, 419 P.2d at 176 n. 15]).

A. *Your Product*

The CGL policy contained an exclusion for "[p]roperty damage to 'your product' arising out of it or any part of it." That exclusion did not necessarily apply.

Liberty had the ATCO counterclaim, which was submitted with the tender of defense. ATCO alleged that it had supplied Akroflex, purchased from Omega, to various building contractors and that those contractors experienced "catastrophic product failure of Akroflex." As an example, ATCO alleged that, "when Akroflex came into contact with water, the Akroflex finish immediately began to dissolve and peel off both surfaces." To show that ATCO had suffered damages, it claimed that "contractors who have purchased Akroflex from ATCO ha[ve] suffered cata-

strophic product failure with Akroflex and have made demand upon ATCO to be reimbursed for damages suffered as a result of the defective product." Regarding the amount of damages, ATCO merely stated that it "suffered and sustained damages in an amount to be proven at trial."

Omega argues, in addition, that other facts known to Liberty at the time of tender demonstrated the potential that ATCO was asserting a claim covered under the policy. Omega relies on fifteen earlier cases involving Akroflex delaminating from buildings after exposure to water. Omega argues that Liberty acquired from those cases "actual and specialized knowledge" regarding the Akroflex product such that Liberty knew of the potential for damage to a building when its exterior coating had dissolved.

■ Based on the underlying claim and the extrinsic evidence available to Liberty at the time of tender, there was the potential that ATCO sought recovery for property damage separate from the damage to the Akroflex, i.e., damage to buildings. Thus Liberty had a duty to defend until it could prove that there was no possibility that ATCO's claim might be covered.

### B. *Impaired Property*

Liberty also argues that the "impaired property" exclusion bars coverage. The exception to the impaired property exclusion, however, requires coverage when the loss of use arises out of a "sudden and accidental physical injury to [Omega's] product." The delamination of the Akroflex when in contact with water reasonably could turn out to be a "sudden and accidental physical injury" to the Akroflex product. Therefore, the impaired property exclusion does not support Liberty's claim of no potential for coverage.

### C. *Investigation and Arbitration*

Finally, Liberty claims that, after it accepted the tender of defense in September 1999 and agreed to defend under a reservation of rights, it conducted an investigation which confirmed that no potential for coverage existed. Liberty asserts that it had no duty to defend because it learned that Omega had consented to an arbitration to which it was not required to submit and because its investigation revealed that the arbitration did not encompass potentially covered property damage.

■ Even if Omega violated the arbitration provision of the policy by consenting to arbitration with ATCO without Liberty's consent, Liberty cannot now assert this defense after it had denied its duty to defend all along. Liberty denied coverage *before* Omega agreed to arbitration. An insurer that has denied coverage may not defend against the insured's coverage claim based on the insured's failure to perform a condition of the policy. By initially denying coverage, the insurer has "demonstrated performance of the condition would not have altered its response to the claim." *Select Ins. Co. v. Superior Court,* 226 Cal.App.3d 631, 276 Cal.Rptr. 598, 637 (1990). In cases in which the insurer *belatedly* relies on a violation of the policy, "the breach cannot be a valid defense unless the insurer was substantially prejudiced thereby." *Clemmer v. Hartford Ins. Co.,* 22 Cal.3d 865, 151 Cal.Rptr. 285, 587 P.2d 1098, 1107 (1979). The insurer has the burden of proving substantial prejudice. Liberty has neither shown nor argued that it was substantially prejudiced by Omega's decision to arbitrate.

According to Liberty, the investigation undertaken after the September 1999 offer to defend under a reservation of rights confirmed that ATCO's potential damages were limited to non-covered repair and replacement of Akroflex and non-covered

business-loss claims. Citing *Buss v. Superior Court*, 16 Cal.4th 35, 65 Cal.Rptr.2d 366, 939 P.2d 766 (1997), Liberty asserts that, even if it had been permitted to undertake the defense after September 1999, it would now be entitled to reimbursement of defense costs. Because its investigation in 1999 demonstrated no potential for coverage, Liberty argues, it *never* had a duty to defend. Liberty misreads *Buss*.

The facts known to Liberty at the time of first tender triggered the duty to defend. If the investigation undertaken in September 1999 conclusively demonstrated that there was no potentially covered claim, the duty to defend may have been extinguished, but only prospectively and not retroactively. *Id.* at 773.

The district court has never considered whether Liberty's investigation in 1999 extinguished the duty to defend. The district court's ruling dismissing the Fourth Amended Complaint was based only on a holding that Omega's pleadings did not allege damage to property other than its own product and, therefore, that Omega had failed to plead facts sufficient to show the potential of a covered claim. We disagree, but it now is for the district court to consider Omega's claims of breach of contract and bad faith based on Liberty's failure to tender a defense in April 1998. It also is for the district court to consider Liberty's defense to those claims based on its contention that it can show conclusively that there never was a covered claim asserted by ATCO against Omega.

REVERSED and REMANDED.

* This disposition is not appropriate for publication and may not be cited to or by the courts