[No. S024390. Nov. 22, 1993.]

MONTROSE CHEMICAL CORPORATION OF CALIFORNIA,
Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CANADIAN UNIVERSAL INSURANCE COMPANY, INC., et al., Real
Parties in Interest.

## COUNSEL

Latham & Watkins, David L. Mulliken, Richard A. Conn, Jr., Kristine L. Wilkes, Donna J. Williams, Daniel E. Butcher and Michael G. Romey for Petitioner.

Munger, Tolles & Olson, Cary B. Lerman, Charles D. Siegal and Kristin A. Linsley as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Peter W. Davis, Barry Ostrager, Coudert Brothers, Douglas L. Hallett, William M. Samoska, Manfried H. Stucki, Boornazian, Jensen & Garthe, Charles I. Eisner, Alan E. Swerdlow, O'Melveny & Myers, Ralph W. Dau, H. Douglas Galt, Mindlin, Tigerman & Holtzman, Michael Holtzman, Drinker, Biddle & Reath, John Chesney, Richard T. Buchanan, Jeffrey A. Pott, Wilson, Kenna & Borys, Lawrence Borys, Jeffrey Burt, Buchalter, Nemer, Fields, & Younger, Marcus M. Kaufman, Adrienne F. Millican and Cheryl A. Orr for Real Parties in Interest.

Hufstedler, Kaus & Ettinger, Thomas J. Ready, Wiley, Rein & Fielding, Christopher D. Cerf, Laura A. Foggan and William A. McGrath as Amici Curiae on behalf of Real Parties in Interest.

## OPINION

**PANELLI, J.**—This declaratory relief action presents issues relating to the scope of a liability insurer's duty to defend its insured in an underlying third party lawsuit. The parties before us—carriers who issued comprehensive general liability (CGL) policies and the pesticide manufacturer to which the policies were sold—disagree on the proper use of extrinsic evidence in determining the scope of the defense duty and the nature of the parties' respective burdens on motions for summary adjudication of defense obligations. We conclude that evidence extrinsic to the underlying complaint can defeat as well as generate a defense duty, and that summary adjudication of the defense duty follows the same procedural rules as those applicable in any other type of litigation. Because the Court of Appeal correctly applied the law in this case, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

From 1947 to 1982, Montrose Chemical Corporation of California (Montrose) manufactured the pesticide dichloro-diphenyl-trichlorethane (DDT) at its facility in Torrance, California. During the 1960's conservationists began to raise serious concerns about the effect of DDT on the environment (see, e.g., Carson, The Silent Spring (1963)), and in 1972 the federal government prohibited its use within this country. Montrose continued to manufacture DDT for export at the Torrance facility until it closed the plant in 1982.

In 1990 the United States and the State of California sued Montrose in the United States District Court for the Central District of California under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (42 U.S.C. § 9607 et seq.) (CERCLA). (United States, et al. v. Montrose Chemical Corporation of California, et al. (U.S. Dist. Ct. C.D.Cal.), 1990, No. CV 90-3122-AAH (JRx)).) The CERCLA action alleges that Montrose's operation of its Torrance facility caused environmental contamination that damaged land, water, and wildlife in the Los Angeles Harbor and neighboring waters. CERCLA imposes liability without fault on present and former owners of hazardous waste disposal sites, transporters of hazardous wastes, and those who arrange for the transport and disposal of hazardous wastes. (42 U.S.C. § 9607(a).) The complaint does not allege that Montrose intentionally caused the alleged contamination. Montrose is also named as a defendant in a cross-complaint filed by the Los Angeles County Sanitation District. The cross-complaint alleges that Montrose's operations at the Torrance facility resulted in property damage over a lengthy period, for which Montrose should be held liable on theories of strict liability and negligence.

Montrose had purchased liability insurance from various carriers[1] to cover its operations at the Torrance facility from 1960 to 1986. The carriers issued to Montrose CGL policies in which they promised to defend it against "any suit . . . seeking damages on account of bodily injury or property damage, even if any of the allegations of the suit are groundless, false, or fraudulent." The carriers also agreed to indemnify Montrose for "bodily injury or property damage . . . caused by an occurrence." "Property damage" was defined as "injury to or destruction of tangible property which results during the policy period." "Occurrence" was defined as "an accident, including continuous or repeated exposure to conditions which results in . . . property

---

[1]Defendants Canadian Universal Insurance Company, Inc.; Insurance Company of North America (INA); American Motorists Insurance Company (AMICO); the Travelers Indemnity Company (Travelers); National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National Union); Centaur Insurance Company; and Admiral Insurance Company.

damage neither expected nor intended from the standpoint of the insured. . . ."

Soon after the filing of the original complaint in the CERCLA action, Montrose gave notice to the carriers and requested that they provide it with a defense pursuant to their policies. Each carrier either denied coverage and declined to defend, or conditioned an offer of a defense on terms Montrose contends were inconsistent with applicable law.[2]

 Montrose brought a declaratory relief action against the carriers, seeking a declaration that each owed a duty to defend in the federal action and cross-complaint. The carriers denied they owed a duty to defend; each asserted a number of affirmative defenses, including exclusions contained in the various policies.

Montrose moved for summary adjudication of the insurers' duty to defend. It argued that under *Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168], it was entitled as a matter of law to have its insurers defend the underlying CERCLA action because the allegations of the complaint, along with the terms of the CGL policies, created a potential for liability, thus triggering a duty to defend. The insurers countered that Montrose had failed to establish that it was entitled to summary adjudication, and that extrinsic evidence revealed a triable issue of fact regarding whether a potential for liability existed, thus defeating Montrose's motion for summary adjudication of the insurers' defense duty.

The trial court denied Montrose's motion. It found that Montrose had failed to make a prima facie showing that the CERCLA action created a potential for coverage, reasoning that Montrose could not simply rely on the allegations of the third party's complaint, which were "neutral" regarding whether the alleged contamination was caused by an "occurrence" within the meaning of the policies or by Montrose's regular business practices (which the trial court evidently viewed as outside the concept of "occurrence"). Absent an affirmative evidentiary showing that the contamination alleged in the CERCLA complaint resulted from an accident or occurrence, the trial court concluded, Montrose could not show a potential for coverage. The trial court also found that the insurers had adduced extrinsic evidence creating a triable issue of fact as to whether the CERCLA complaint alleged acts within the policies' coverage. According to the trial court, the evidence, if believed,

---

[2]INA refused to honor Montrose's request for independent counsel (see *San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358, 364 [208 Cal.Rptr. 494, 50 A.L.R.4th 913]); National Union insisted, under a reservation of rights, that Montrose agree to reimburse it for its attorney fees in the event a court ultimately found it had no indemnity obligation. We express no opinion on the merits of these contentions.

could support the inference that the alleged contamination resulted from Montrose's deliberate business management practices rather than from an accident or occurrence; therefore, summary adjudication was inappropriate.

Montrose sought relief by writ in the Court of Appeal. That court first summarily denied Montrose's petition and then, following our order retransferring the cause, granted relief. The Court of Appeal concluded that Montrose had made a prima facie showing of potential liability under the policies. While agreeing with the insurers that facts extrinsic to the underlying complaint may defeat as well as trigger a duty to defend, the Court of Appeal concluded that the insurers' extrinsic evidence did no more than put in dispute whether the acts alleged in the underlying complaint would eventually fall within one or more of the exceptions to the policies' coverage. Such a dispute, the court reasoned, could not defeat the potential for coverage that Montrose had established, and so could not eliminate the duty to defend.

We granted review.[3]

---

[3]Travelers has filed briefs in which the other carriers have joined, in whole or substantial part, and National Union has filed its own reply brief. References to Travelers in this opinion include the other carriers, unless the context otherwise requires.

AMICO separately seeks reversal of the determination that it owes a duty to defend Montrose on the ground that Montrose has not established it is a named insured under AMICO's policies. AMICO issued CGL policies to Stauffer Chemical Company, which undisputedly owned a 50 percent interest in Montrose throughout the relevant period. The policies covered Stauffer and its "owned or controlled subsidiaries or affiliated companies or corporations now existing or hereafter created." Since the inception of this litigation, AMICO has disputed whether Montrose is a named insured under its policies. The trial court made no express finding on this issue, and the Court of Appeal did not address it despite briefing and argument and a petition for rehearing. AMICO separately petitioned for review in this court, raising the issue again. In opposition, Montrose invites us to hold that it is a named insured as a matter of law, given the plain meaning of the policies' language. We cannot properly do so. As an appellate tribunal, we are constrained not to make what is rightly a factual finding as to Montrose's status as a named insured. Instead, we shall remand this aspect of the case to the trial court for further proceedings.

For its part, Montrose argues that AMICO is collaterally estopped to relitigate the "named insured" issue due to a ruling in a related action. Since 1986 Montrose has litigated coverage issues under these same policies pertaining to Montrose's alleged liability arising from the "Stringfellow site," a former state-approved waste disposal site near Riverside, California, and the "Parr-Richmond site," a former processing facility near Richmond, California. (Montrose Chemical Corporation of California, et al. v. Canadian Universal Ins. Co., Inc., et al. (Super. Ct. L.A. County, 1986, Nos. 594148, 597389), hereafter Canadian I.) After discovery in Canadian I, AMICO moved for summary adjudication, seeking a determination that Montrose is not a named insured under its policies; Montrose filed a responsive cross-motion. The trial court granted Montrose's motion and denied AMICO's, ruling that it "shall be deemed established at the trial" that "Montrose is a 'named insured' under [the AMICO policies]." The parties disagree as to whether this ruling collaterally estops AMICO

DISCUSSION

Recently we had occasion to restate the familiar principles governing adjudication of the insurer's duty to defend. ■ In *Horace Mann Ins. Co.* v. *Barbara B.* (1993) 4 Cal.4th 1076 [17 Cal.Rptr.2d 210, 846 P.2d 792] (*Horace Mann*), we observed: "[A] liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity. (*Gray* v. *Zurich Insurance Co.* [*supra*, 65 Cal.2d 263 (*Gray*)]. As we said in *Gray*, 'the carrier must defend a suit which *potentially* seeks damages within the coverage of the policy.' (*Id.* at p. 275, italics in original.) Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded. [Citations.]" (*Horace Mann, supra,* 4 Cal.4th at p. 1081.)

■ "The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy. (*Gray, supra,* 65 Cal.2d at p. 276.)" (*Horace Mann, supra,* 4 Cal.4th at p. 1081.) As one Court of Appeal has put it, "[f]or an insurer, the existence of a duty to defend turns not upon the ultimate adjudication of coverage under its policy of insurance, but upon those facts known by the insurer at the inception of a third party lawsuit. [Citation.] Hence, the duty 'may exist even where coverage is in doubt and ultimately does not develop.' [Citation.]" (*Saylin* v. *California Ins. Guarantee Assn.* (1986) 179 Cal.App.3d 256, 263 [224 Cal.Rptr. 493].)

■ The defense duty is a continuing one, arising on tender of defense and lasting until the underlying lawsuit is concluded (*Lambert* v. *Commonwealth Land Title Ins. Co.* (1991) 53 Cal.3d 1072, 1077, 1079 [282 Cal.Rptr. 445, 811 P.2d 737]), or until it has been shown that there is *no* potential for coverage, as we demonstrate below. Imposition of an immediate duty to defend is necessary to afford the insured what it is entitled to: the full protection of a defense on its behalf. (See *Signal Companies, Inc.* v. *Harbor Ins. Co.* (1980) 27 Cal.3d 359, 367 [165 Cal.Rptr. 799, 612 P.2d 889, 19 A.L.R.4th 75].)

The insured's desire to secure the right to call on the insurer's superior resources for the defense of third party claims is, in all likelihood, typically

in the present action to challenge Montrose's status as a named insured. As the Court of Appeal did not address this argument, we will not reach it. On remand, the parties will have the opportunity to argue their respective positions on this issue.

As AMICO joins in Travelers's brief raising other issues pertinent to determination of its duty to defend, our discussion of those issues applies as well to AMICO.

as significant a motive for the purchase of insurance as is the wish to obtain indemnity for possible liability. As a consequence, California courts have been consistently solicitous of insureds' expectations on this score. (See, e.g., *Horace Mann, supra,* 4 Cal.4th 1076; *CNA Casualty of California* v. *Seaboard Surety Co.* (1986) 176 Cal.App.3d 598, 607 [222 Cal.Rptr. 276].)

■ *Gray* made clear that facts known to the insurer and extrinsic to the third party complaint can generate a duty to defend, even though the face of the complaint does not reflect a potential for liability under the policy. (*Gray, supra,* 65 Cal.2d at p. 276.) This is so because current pleading rules liberally allow amendment; the third party plaintiff cannot be the arbiter of coverage. (*Ibid.*)

■ Whether extrinsic evidence can *defeat* the defense duty is a question that has elicited varying responses in the Courts of Appeal.

In *State Farm Mut. Auto. Ins. Co.* v. *Flynt* (1971) 17 Cal.App.3d 538 [95 Cal.Rptr. 296] (*Flynt*), an automobile liability insurance policy made permission for use of the car a condition of coverage. While driving a car he had stolen, the insured's stepson was involved in an accident; his passenger brought a personal injury suit. In the insurer's declaratory relief action to determine the extent of its defense duty, the Court of Appeal concluded that, although the passenger's complaint did not allege the car was stolen, the insurer had no duty to defend. (*Id.* at p. 548.) The *Flynt* court reasoned: "If, as stated in *Gray,* an insurance company may not rely solely on the complaint filed by a third party against its insured to determine its potential liability and duty to defend under an insurance policy, if, in making this determination, it must consider facts it learns from its own insured and from its own investigation, then it follows it may determine from the total facts it learns from all sources that potential liability does not exist under the policy and refuse to defend the suit." (*Ibid.*)

In *Saylin* v. *California Ins. Guarantee Assn., supra,* 179 Cal.App.3d 256, the third party complaint alleged that the insured committed tortious acts within the policy period. However, discovery revealed undisputedly that the insured had in fact done nothing concerning the third party while the policy was in force. The Court of Appeal noted that had the insurer known these facts at the outset of the litigation, it would have been justified in denying a defense. Citing *Flynt, supra,* the court held that the California Insurance Guarantee Association, on behalf of the insolvent insurer, had a duty to determine independently whether the third party claim was covered, and properly denied a defense on ascertaining the facts. (*Saylin* v. *California Ins. Guarantee Assn., supra,* 179 Cal.App.3d at p. 264.)

In *Fire Ins. Exchange* v. *Jiminez* (1986) 184 Cal.App.3d 437 [229 Cal.Rptr. 83], the claimant in the underlying action was injured on the insured's business premises. The insured sought a defense under his homeowners policy, although the policy expressly excluded business pursuits. The Court of Appeal concluded the insurer had no duty to defend, reasoning that no potential for liability under the policy existed inasmuch as the uncontradicted evidence showed the accident occurred on the business premises; amendment of the third party complaint to state a covered claim was, therefore, impossible. (*Id.* at p. 442.)

The Court of Appeal in *CNA Casualty of California* v. *Seaboard Surety Co.*, *supra*, 176 Cal.App.3d at page 606 (*CNA*), stated a contrary rule in dictum. That dictum was cited approvingly in *Jenkins* v. *Insurance Co. of North America* (1990) 220 Cal.App.3d 1481, 1489 [272 Cal.Rptr. 7], and *California Ins. Guarantee Assn.* v. *Wood* (1990) 217 Cal.App.3d 944, 948 [266 Cal.Rptr. 250]. In none of these cases, however, was the principle that an insurer may not resort to extrinsic evidence to defeat a duty to defend embodied in the holding.

Moreover, the authority that *CNA*, *supra*, 176 Cal.App.3d at page 606, cites in support of its pronouncement on extrinsic evidence does not stand for the proposition advanced. In *Remmer* v. *Glens Falls Indem. Co.* (1956) 140 Cal.App.2d 84 [295 P.2d 19, 57 A.L.R.2d 1379], cited by *CNA*, the court observed, "[The defense clause of the policy] required [the insurer] to defend the insured in any action alleging an injury under the policy 'even if such suit is groundless, false or fraudulent.' Under such a clause it is the duty of the insurer to defend the insured when sued in any action where the facts alleged in the complaint support a recovery for an 'occurrence' covered by the policy, regardless of the fact that the insurer has knowledge that the injury is not in fact covered. (*Lee* v. *Aetna Casualty & Surety Co.* [2d Cir. 1949] 178 F.2d 750; *Employers Mut. Liability Ins. Co. of Wis.* v. *Hendrix* [4th Cir. 1952] 199 F.2d 53 [41 A.L.R.2d 424].) But it is equally true that the insurer is not required to defend an action against the insured when the complaint in that action shows on its face that the injury complained of is not only not covered by, but is excluded from the policy. [Citation.] That is the present case." (*Id.* at p. 90.) Thus, *Remmer*, like *CNA*, merely states in dictum that extrinsic evidence cannot defeat the duty to defend.

The source of the dicta in *CNA* and *Remmer* is *Lee* v. *Aetna Casualty & Surety Co.* (2d Cir. 1949) 178 F.2d 750 (*Lee*). The *Lee* court held that the validity of a claim of breach of the duty to defend "depends upon the meaning of the defendant's promise to 'defend . . . any suit against the Insured alleging injury, sickness, disease or destruction covered by this

Policy . . . even if such suit is groundless, false or fraudulent.' This language means that the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury 'covered' by the policy; it is the claim which determines the insurer's duty to defend; and it is irrelevant that the insurer may get information from the insured, or from any one else, which indicates, or even demonstrates, that the injury is not in fact 'covered.' " (*Id.* at p. 751.) Although the latter sentence, taken in isolation, might seem to describe an indefeasible defense duty, closer examination of the opinion compels a different conclusion. Immediately following the language just quoted, the court said, "The insurer has promised to relieve the insured of the burden of satisfying the tribunal where the suit is tried, that the claim as pleaded is 'groundless.' " (*Id.* at p. 752.) The juxtaposition of the two sentences suggests that what the court was getting at was the well-established principle that the insurer may not decline to defend a suit merely because it is devoid of merit, but instead must assert appropriate defenses on its insured's behalf in the underlying action. Later in the opinion, the *Lee* court stated, "It follows that, if the plaintiff's complaint against the insured alleged facts which would have supported a recovery covered by the policy, it was the duty of the defendant to undertake the defense, *until it could confine the claim to a recovery that the policy did not cover.*" (*Id.* at p. 753; italics added.) *Lee* therefore contemplates that the insurer may terminate its defense obligation by proving that the underlying claim falls outside the scope of policy coverage, but not by demonstrating that the claim lacks merit, or might have merit only on some theory outside the scope of coverage. To read *Lee* as creating a rule of indefeasibility for the defense duty thus is to give it an unwarranted extension. The *CNA* dictum (*supra*, 176 Cal.App.3d at p. 606) does not accurately state the law in this respect.

The Court of Appeal in the present case followed the *Flynt* line of decisions, reasoning that "neither logic, common sense, nor fair play supports a rule allowing only the insured to rely on extrinsic facts to determine the potential for coverage. It would be pointless, for example, to require an insurer to defend an action where undisputed facts developed early in the investigation conclusively showed, despite a contrary allegation in the complaint, that the underlying acts occurred on a date when the policy was not in effect or at a location concededly not covered by the policy. [Citations.] Similarly, where extrinsic evidence establishes that the ultimate question of coverage can be determined as a matter of law on undisputed facts, we see no reason to prevent an insurer from seeking summary adjudication that no potential for liability exists and thus that it has no duty to defend. [Citations.] We see the critical distinction as not whether extrinsic evidence may be considered, but whether such evidence presents undisputed facts which

conclusively eliminate a potential for liability." We concur in the reasoning of the Court of Appeal on this point.

■ In holding that the trial court erroneously denied Montrose's motion for summary adjudication of the question whether the insurers owed a duty to defend the CERCLA action, the Court of Appeal stated: "[O]nce the insured has established potential liability by reference to the factual allegations of the complaint, the terms of the policy, and any extrinsic evidence upon which the insured intends to rely, the insurer must assume its duty to defend unless and until it can conclusively refute that potential. Necessarily, an insurer will be required to defend a suit where the evidence suggests, but does not conclusively establish, that the loss is not covered. . . . A carrier remains free to seek declaratory relief if undisputed facts conclusively show, as a matter of law, that there is no potential for liability."

Travelers criticizes the Court of Appeal's variously expressed references to "possibility" of coverage as the test for whether the insurer owes a duty to defend its insured in the underlying suit. The correct test, Travelers insists, is whether there exists a *"reasonable* potential for coverage" (italics added); this permits the insurer to engage in what Travelers calls a "factual balancing," taking into account disputed and undisputed facts, before making its determination whether to provide its insured with a defense.

Travelers's argument betrays a fundamental misunderstanding of *Gray*, *supra*, and of what is at issue in an adjudication of the defense duty. Because the policy at issue in *Gray* was ambiguous, and could be read either to exclude or to provide for coverage, we held that ordinary principles of insurance contract interpretation required it be construed in the insured's favor, according to his reasonable expectations. (*Gray*, *supra*, 65 Cal.2d at pp. 271-272; see also *Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1264-1265, 1272 [10 Cal.Rptr.2d 538, 833 P.2d 545].) As a distinct, separate, and alternative basis for our decision, we recognized that the insured is entitled to a defense if the underlying complaint alleges the insured's liability for damages *potentially* covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy. (*Gray*, *supra*, 65 Cal.2d at pp. 275-276.)

■ The alternative holding in *Gray*, *supra*, 65 Cal.2d 263, establishes the rule that the insurer must defend in some lawsuits where liability under the policy ultimately fails to materialize; this is one reason why it is often said that the duty to defend is broader than the duty to indemnify. (See, e.g., *Fresno Economy Import Used Cars, Inc.* v. *United States Fid. & Guar. Co.* (1977) 76 Cal.App.3d 272, 278 [142 Cal.Rptr. 681].) Any doubt as to

whether the facts establish the existence of the defense duty must be resolved in the insured's favor. (*United Pacific Ins. Co. v. McGuire Co.* (1991) 229 Cal.App.3d 1560, 1567 [281 Cal.Rptr. 375]; *CNA, supra,* 176 Cal.App.3d 598, 605, fn. 1; *Eichler Homes, Inc. v. Underwriters at Lloyd's, London* (1965) 238 Cal.App.2d 532, 538 [47 Cal.Rptr. 843].)

Thus, Travelers' advocacy of a "reasonable potential for coverage" standard finds no support in *Gray.* Indeed, in that case we said that "the insurer need not defend if the third party complaint *can by no conceivable theory raise a single issue which could bring it within the policy coverage.*" (*Gray, supra,* 65 Cal.2d at p. 276, fn. 15, italics added.) The quoted language cannot reasonably be understood to refer to anything beyond a bare "potential" or "possibility" of coverage as the trigger of a defense duty. Contrary to Travelers's interpretation, California courts have used the terms "possibility" and "potential" interchangeably, and we see no difference between them. (See *Fresno Economy Import Used Cars, Inc. v. United States Fid. & Guar. Co., supra,* 76 Cal.App.3d at p. 278.)

Travelers further argues that, although the Court of Appeal correctly recognized that facts extrinsic to the third party complaint may obviate the insurer's defense duty, it erred in reasoning that only *undisputed* extrinsic evidence can do so. The duty to defend is determined by reference to the policy, the complaint, and *all* facts known to the insurer from any source. (*Gray, supra,* 65 Cal.2d at pp. 276-277.) If this formulation is limited to undisputed facts, Travelers contends, then an insured can simply refuse to concede facts that take the underlying claim outside the scope of coverage, and thereby set itself up as arbiter of the defense duty. Travelers urges that such a rule effectively exempts determinations of the insurer's defense duty from conventional rules of contract interpretation.

■ Travelers again misconceives what is at issue in an action seeking declaratory relief on the issue of the duty to defend. To prevail, the insured must prove the existence of a *potential for coverage,* while the insurer must establish *the absence of any such potential.* In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot.* Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales. Any seeming disparity in the respective burdens merely reflects the substantive law.

Travelers raises the specter of intransigent insureds being empowered to block summary judgment, to which insurers are otherwise entitled, with

mere assertions that coverage may exist. The prospect is apparent rather than real. This is because, as in summary judgment proceedings generally, an insured cannot manufacture a dispute on summary judgment, ipse dixit, by refusing to concede the truth of a fact without adducing some evidentiary support for its position.

■ It is appropriate to recall at this point the procedural ramifications of rulings on motions for summary judgment in actions seeking a declaration of the existence or nonexistence of the duty to defend. When an insured successfully moves for summary judgment that the insurer owes a defense duty, the insurer's duty is clear. If an insurer successfully moves for summary judgment that it owes no duty to defend, the absence of a duty is clear. But an unfavorable ruling on the insured's motion does not establish the absence of a defense duty; it merely means that the question whether the insurer must defend is not susceptible of resolution by undisputed facts, but instead must go to trial. In the interim, presumably there continues to exist a potential for coverage and thus a duty to defend. As we said in *Horace Mann, supra,* 4 Cal.4th at page 1085, when the evidence adduced in the declaratory relief action does not permit the court to eliminate the possibility that the insured's conduct falls within the coverage of the policy, "the duty to defend is then *established,* absent additional evidence bearing on the issue." (*Ibid.*) If the insurer, having defeated the insured's motion for summary judgment, seeks to escape the defense duty altogether, it must present proof of the kind described in the preceding paragraph, i.e., evidence that the underlying claim cannot come within the policy coverage by virtue of the scope of the insuring clause or the breadth of an exclusion. In order to avoid any possibility that a refusal to defend may subject it to eventual liability for bad faith, the insurer is well advised to seek a judicial determination that it owes no defense. This it may do by means of a cross-motion for summary judgment in the declaratory relief action.[4]

■ To eliminate the risk of inconsistent factual determinations that could prejudice the insured, a stay of the declaratory relief action pending resolution of the third party suit is appropriate when the coverage question turns on facts to be litigated in the underlying action. (See, e.g., *California Ins. Guarantee Assn.* v. *Superior Court* (1991) 231 Cal.App.3d 1617, 1627-1628 [283 Cal.Rptr. 104]; *General of America Ins. Co.* v. *Lilly* (1968) 258

---

[4]Effective January 1, 1993, the California statute governing summary judgment practice, Code of Civil Procedure section 437c, was amended. (Stats. 1992, ch. 1348, § 1.) The amendment eliminated the former requirement that a plaintiff moving for summary judgment refute each of the defendant's affirmative defenses, thereby bringing California practice in line with federal law. (See Code Civ. Proc., § 437c, subd. (n)(1).) Because this case was decided under the former law, we need not and do not consider the impact of the amendment on the case before us.

Cal.App.2d 465, 471 [65 Cal.Rptr. 750].) For example, when the third party seeks damages on account of the insured's negligence, and the insurer seeks to avoid providing a defense by arguing that its insured harmed the third party by intentional conduct, the potential that the insurer's proof will prejudice its insured in the underlying litigation is obvious. This is the classic situation in which the declaratory relief action should be stayed. By contrast, when the coverage question is logically unrelated to the issues of consequence in the underlying case, the declaratory relief action may properly proceed to judgment. An illustration of this latter sort of case is found in *Flynt*, *supra*, 17 Cal.App.3d 538. There, the question whether the owner had granted permission for the driver's use of the car was irrelevant to the third party's personal injury claim, and could properly be determined in the declaratory relief action independently of the timing of the third party suit.

Travelers cites *Lassen Canyon Nursery* v. *Royal Ins. Co. of America* (9th Cir. 1983) 720 F.2d 1016 (*Lassen Canyon*) in support of its position that an insured must prove the existence of a "reasonable potential for coverage," but that case does not help Travelers. *Lassen Canyon* noted that "A thorough review of plaintiffs' complaint in the underlying action and other information available to the insurers about the nature of the action reveals no claim which could reasonably be construed as seeking recovery for property damage as defined in the policies. . . . [¶] . . . [¶] An insurer . . . will not be compelled to defend its insured when the potential for liability is so 'tenuous and farfetched.' " (*Id.* at p. 1018, quoting *Giddings* v. *Industrial Indemnity Co.* (1980) 112 Cal.App.3d 213, 220 [169 Cal.Rptr. 278] [*Giddings*].) The reason the *Lassen Canyon* court labelled the potential for liability under the policy "tenuous and farfetched" is that the policy, covering claims for property damage, clearly did not cover claims for economic damages such as the federal antitrust claim advanced by the third party plaintiffs in the underlying action. (*Lassen Canyon*, *supra*, 720 F.2d at p. 1018.) In other words, the antitrust claim was not "of the nature and kind covered by the policy." (*Gray*, *supra*, 65 Cal.2d at p. 274.) No reasonable construction of the claim could potentially bring it within the coverage of the policy. Thus, the insurer owed no defense duty. *Lassen Canyon* is inapposite to this case, in which the underlying suit *does* seek damages of the nature and kind covered by the policy. (See *AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 842 [274 Cal.Rptr. 820, 799 P.2d 1253].)

Likewise, *Giddings*, *supra*, 112 Cal.App.3d 213, involved an attempt to secure a defense of federal court actions seeking damages for injury to intangible economic interests and property rights in a bank and in a private corporation. The *Giddings* court correctly held that the federal actions did not implicate the policies, which covered liability for property damage,

variously defined as "injury to or destruction of tangible property" and "(1) physical injury to or destruction of tangible property . . . , including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period." (*Id.* at pp. 216-217.) *Giddings*, too, is inapposite to the present case because a suit seeking recovery for injuries to intangible economic interests is not a suit "of the nature and kind" covered by a CGL policy, whereas environmental contamination alleged under CERCLA is "property damage" within the meaning of such a policy. (See *AIU Ins. Co.* v. *Superior Court, supra,* 51 Cal.3d at p. 842.)[5]

Travelers asserts that the decision of the Court of Appeal in this case is inconsistent with *Select Ins. Co.* v. *Superior Court* (1990) 226 Cal.App.3d 631 [276 Cal.Rptr. 598] (*Select*). We disagree: *Select* is distinguishable because it involved the defense of lack of notice. In *Select* the insured, who had brought an unsuccessful antitrust suit against a third party in federal court, suffered a judgment on the third party's antitrust counterclaim. Four years after the filing of the counterclaim and several months after entry of judgment thereon, the insured notified his insurers and requested a defense and indemnity. The insurers declined and filed a declaratory relief action seeking a determination of their duties toward the insured. The trial court ruled that the insurers could not rely on the insured's failure to give notice as required under the policies, reasoning that once an insurer has denied coverage it waives any claim of noncompliance with the policy's notice provisions. The Court of Appeal reversed. It noted that in the usual case the insurer's denial of coverage demonstrates it would have acted no differently had it received timely notice under the policy, thus foreclosing reliance on the notice defense. (See *Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 883 [151 Cal.Rptr. 285, 587 P.2d 1098].) However, the court held that on the "somewhat unique facts" of *Select,* the insurers might be able to show prejudice from the insured's failure to give notice, since the delay prevented them from accepting the defense under a reservation of rights, attempting to settle the counterclaim, and pursuing the insured for the amount of the settlement. (See *Maryland Casualty Co.* v. *Imperial Contracting Co.* (1989) 212 Cal.App.3d 712, 720-721 [260 Cal.Rptr. 797]; *Select, supra,* 226 Cal.App.3d at pp. 637-638.) Because the insurers could not be held to have

---

[5]It might be argued that *Giddings* and *Lassen Canyon* are inconsistent with the *Gray* "potential for coverage" rule, inasmuch as, until the courts determined that the underlying claim was not of the nature and kind covered by the policy, there existed a theoretical possibility of coverage and, with it, a defense duty. But it is unclear whether an uncertainty regarding a purely *legal* question of policy interpretation is the sort of "potential" envisioned by *Gray.* The argument is not before us in the present case, and we therefore do not address it.

waived their notice defense, the *Select* court concluded that defense had to be adjudicated before the insured could be entitled to summary adjudication on the issue of the defense duty. (226 Cal.App.3d at p. 639.)

*Select* does not stand for the proposition that an insured bears the burden of negating each of the insurer's asserted reasons for denying a defense as a prerequisite to summary adjudication of the defense duty; indeed, *Select* places on the insurer the burden of proving prejudice from lack of timely notice and reaffirms the rule of *Gray*. (*Select, supra*, 226 Cal.App.3d at pp. 638-639.)

Travelers also points to decisions observing that an insurer may, "at its own risk," deny a defense based on its conclusion that coverage does not exist (the risk being that the insured will recover not only the costs of defense but also indemnity for a resulting settlement or adverse judgment in a bad faith action after the conclusion of the underlying suit). (See, e.g., *Gray, supra*, 65 Cal.2d at p. 279; *Flynt, supra*, 17 Cal.App.3d at p. 548; *Saylin* v. *California Ins. Guarantee Assn., supra*, 179 Cal.App.3d at p. 263.) Travelers seems to contend that the existence of an eventual remedy for the insurer's bad faith denial of a defense somehow supports restriction of the duty to defend. The contention lacks merit. The scope of the duty is distinct from the remedies available to enforce it. Obviously, any denial of coverage and defense may be erroneous, and therefore run the risk of bad faith liability. A totally separate question is what showing the insurer must make in a declaratory relief action to establish the absence of a defense duty.

■ Applying the foregoing principles to this case, we conclude that Montrose showed, prima facie, that the CERCLA complaint fell within the coverage of the various policies. Although the CERCLA complaint did not specify whether Montrose negligently or intentionally disposed of DDT process wastes—and therefore was, as the trial court observed, "neutral" on the question of coverage—its allegations sufficed to raise the possibility that Montrose would be liable for property damage covered by the policies. Extrinsic evidence adduced by the insurers did not eliminate that possibility, but merely placed in dispute whether Montrose's actions would eventually be determined not to constitute an occurrence or to fall within one or more of the exclusions contained in the policies. For instance, the fact that toxic discharges occurred over a lengthy period during which Montrose operated its Torrance facility does not, without more, establish that Montrose expected or intended the property damage that allegedly resulted. (*City of Johnstown, N.Y.* v. *Bankers Standard Ins.* (2d Cir. 1989) 877 F.2d 1146, 1151; see *Shell Oil Co.* v. *Winterthur Swiss Ins. Co.* (1993) 12 Cal.App.4th 715, 748 [15 Cal.Rptr.2d 815] [test for "expected" damage is whether the

insured knew or believed its conduct was substantially certain or highly likely to result in that kind of damage].) And the fact that Montrose's regular business practices involved the disposal of DDT process wastes could not eliminate the possibility that at least some of the property damage might have resulted from accidental causes.

### DISPOSITION

The judgment of the Court of Appeal is affirmed. As to American Motorists Insurance Company only, the matter is remanded to the trial court for further proceedings in accordance with the views expressed in this opinion.

Lucas, C. J., Mosk, J., Arabian, J., Baxter, J., and George, J., concurred.

**KENNARD, J.**—I concur in the majority opinion. I write separately to state my understanding of one aspect of the court's decision.

When an insured calls upon a liability insurer to defend a third party action, the insurer as a general rule may not escape the burden of defense by obtaining a declaratory judgment that it has no duty to defend. Were the rule otherwise, the insured would be forced to defend simultaneously against both the insurer's declaratory relief action and the third party's liability action. Because the duty to defend turns on the potential for coverage, and because coverage frequently turns on factual issues to be litigated in the third party liability action, litigating the duty to defend in the declaratory relief action may prejudice the insured in the liability action. To prevent this form of prejudice, the insurer's action for declaratory relief may be either stayed (see *California Ins. Guarantee Assn.* v. *Superior Court* (1991) 231 Cal.App.3d 1617, 1626-1627 [283 Cal.Rptr. 104]) or dismissed (see *General of America Ins. Co.* v. *Lilly* (1968) 258 Cal.App.2d 465, 471 [65 Cal.Rptr. 750]).

There are at least two exceptions to the general rule barring declaratory relief on the insurer's duty to defend. First, declaratory relief is available if the insurer can establish lack of coverage by means of facts that the insured does not dispute. Second, declaratory relief is available if the insurer's defense to coverage hinges on factual issues that are unrelated to the issues in the third party liability action. (See *State Farm Mut. Auto. Ins. Co.* v. *Allstate Ins. Co.* (1970) 9 Cal.App.3d 508, 527 [88 Cal.Rptr. 246].) In each of these situations, the duty to defend can be determined without forcing the insured to litigate issues that may arise in the third party action.

The general rule and its exceptions shape the insurer's burden of proof on a motion for summary judgment in the declaratory relief action. An insurer

moving for summary judgment must demonstrate an absence of coverage without engaging in litigation that could prejudice the insured's interests in the third party action. It can do so either by relying on undisputed facts or by adducing evidence of facts unrelated to the issues in the liability action. If the trial court determines that the facts on which the insurer relies are disputed and may be litigated in the liability action, the court should deny summary judgment and stay or dismiss the declaratory relief action. If the trial court determines that the facts on which the insurer relies are undisputed, the trial court should proceed to decide whether those facts establish lack of coverage, and grant or deny the motion for summary judgment accordingly. If the trial court determines that the facts on which the insurer relies, although disputed, will not be litigated in the liability action, the trial court should proceed to consider the motion for summary judgment. If there are no triable issues of fact, the court may determine coverage, and hence the duty to defend, by summary judgment. If there are triable issues of fact, then the court should deny summary judgment and permit the declaratory relief action to proceed to trial.

Of course, the insurer may have more than one defense to coverage. In that event, the trial court will need to consider each defense separately to decide whether it can be determined without prejudice to the insured and whether it is amenable to resolution by summary judgment or summary adjudication.

With the understanding that the foregoing is consistent with the court's holding, I join the majority opinion.