Cyril MANUS; Jerry L. Brown; Tyler S. Manus; JV Company, a California general partnership, Plaintiffs—Appellants,

v.

**RANGER INSURANCE COMPANY,** Defendant—Appellee.

No. 03–55551.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 14, 2005.

Decided July 5, 2005.

James E. Loveder, Esq., Howard, Moss, Loveder, Strickroth & Walker, Santa Ana, CA, for Plaintiffs–Appellants.

Susan J. Field, Esq., Musick Peeler & Garrett, Los Angeles, CA, for Defendant–Appellee.

Before KLEINFELD, WARDLAW, and BERZON, Circuit Judges.

### MEMORANDUM *

Cyril Manus, Jerry Brown, Tyler Manus, and JV Company (collectively "JV") appeal the district court's grant of summary judgment in favor of Ranger Insurance Company ("Ranger"), holding Ranger had neither the duty to defend nor to indemnify under the comprehensive general liability and umbrella policies ("policies") Ranger issued to them. The policies provide coverage for " 'bodily injury' or 'property damage' " caused by an "occurrence."

A civil complaint filed by the County of San Bernadino charged JV, nine named individual and corporate defendants, and up to 200 Doe defendants with dumping waste materials at an illegal dump site. The complaint alleged five causes of action, including one for damages resulting from a fire caused by spontaneous combustion of materials dumped by JV and others. Ranger refused to defend JV. JV reached

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

a settlement with the County of San Bernadino and brings this action for breach of the insurance contract and of the duty of good faith and fair dealing.

## I. Duty to Defend

We disagree with the district court's conclusion that there was no duty to defend in the underlying action because the fire was the direct and immediate result of intentional dumping. An insurer is required to defend its insured if the underlying claim against the insured is potentially covered by the policy. *George F. Hillenbrand, Inc. v. Ins. Co. of N. Am.*, 104 Cal.App.4th 784, 800, 128 Cal.Rptr.2d 586 (2002). "To prevail, the insured must prove the existence of a *potential for coverage,* while the insurer must establish *the absence of any such potential.* In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot.*" *Montrose Chem. Corp. v. Superior Court,* 6 Cal.4th 287, 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993). The duty to defend is determined by "facts known to the insurer at the inception of the suit." *Hurley Constr. Co. v. State Farm Fire & Cas. Co.,* 10 Cal.App.4th 533, 538, 12 Cal. Rptr.2d 629 (1992). "Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor." *Horace Mann Ins. Co. v. Barbara B.,* 4 Cal.4th 1076, 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792 (1993).

An insurer has a duty to defend if at least one claim in an underlying complaint is potentially within the scope of coverage. *Buena Vista Mines, Inc. v. Indus. Indem. Co.,* 87 Cal.App.4th 482, 487, 104 Cal. Rptr.2d 557 (2001). Here, there was a potential for coverage of the fourth cause of action, which alleges that a fire broke out "from the spontaneous combustion" of the materials dumped by the defendants and each of them. The underlying complaint alleges that JV dumped its materials at the dump site along with over 200 other named and unnamed defendants. It does not allege that the fire resulted exclusively from JV's intentional dumping, or that materials that JV dumped could have spontaneously combusted on their own. The allegations are thus consistent with a theory that the dumping by others was an "intervening act," essential to the spontaneous combustion of the materials dumped in combination. Moreover, the parties stipulated that JV dumped only "dirt, brush, weeds, grapevines, leaves, tree stumps, tree branches, ice plants, sod, concrete, and tires" whereas the fourth cause of action alleges that "the cause of the fire was the storage of hazardous substances." Because at the inception of the suit Ranger had no knowledge of facts showing that JV dumped hazardous substances or that JV knew that others were dumping hazardous substances, Ranger could not conclude that JV's dumping alone was the "direct and immediate" cause of the fire. The intervening act of other dumpers was the "occurrence" that created the potential for coverage, triggering Ranger's duty to defend. *See Merced Mut. Ins. Co. v. Mendez,* 213 Cal.App.3d 41, 50, 261 Cal.Rptr. 273 (1989) (when a speeding car hits another vehicle at an intersection, an "accident" has occurred as a result of the speeder's intentional act of speeding in interaction with an unexpected intervening act, namely, the other car's presence at the intersection).

The potential for coverage of the resulting property damage was not excluded by the pollution exclusion. The policies provide that there is no coverage for property damage caused "in whole or in part" by the release or discharge of pollutants. "Pollutants" are defined in the policies as "any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, va-

por, soot, fumes, acid, alkalis, chemicals and waste." The scope of the pollution exclusion is limited to "injuries arising from events commonly thought of as pollution, i.e. environmental pollution." *MacKinnon v. Truck Ins. Exchange,* 31 Cal.4th 635, 648, 3 Cal.Rptr.3d 228, 73 P.3d 1205 (2003) (coverage is "interpreted broadly so as to afford the greatest possible protection to the insured, [whereas] ... exclusionary clauses are interpreted narrowly against the insurer").

Ranger argues for a broader interpretation of its pollution exclusion, drawing upon the dictionary definition of "contaminant" and "contaminate." The California Court of Appeal has rejected reliance upon the ordinary dictionary definitions of insurance provisions, reasoning that it is a "basic fallacy" that "the meaning of policy language is to be discovered by citing one of the dictionary meanings of the key words," and holding that "the definitional phrase 'any irritant or contaminant' is too broad to meaningfully define 'pollutant.'" *Id.* at 649, 652, 3 Cal.Rptr.3d 228, 73 P.3d 1205. The Court of Appeal instead relied upon the history of the development of the pollution exclusion: "[T]here appears to be little dispute that the pollution exclusion was adopted to address the enormous potential liability resulting from anti-pollution laws...." *Id.* at 653, 3 Cal.Rptr.3d 228, 73 P.3d 1205.

Given the narrow interpretation of the pollution exclusion in *MacKinnon,* we cannot say that based upon the "facts known to the insurer at the inception of the suit," the materials dumped by JV (including dirt, brush, weeds, grapevines, leaves, tree stumps, tree branches, ice plants, sod, concrete, and tires) could only be considered "contaminants *commonly thought of as pollution.*" *Id.* at 652, 3 Cal.Rptr.3d 228, 73 P.3d 1205. Therefore, the pollution exclusion did not excuse Ranger's duty to defend JV in the underlying lawsuit.

## II. Indemnification for the Settlement

"California law is well settled that where an insurer improperly refuses to defend an insured, the insured is entitled to make a reasonable settlement of the claim in good faith, and then maintain an action against the insurer to recover the amount of the settlement. Further, a reasonable settlement by an insured to terminate the underlying claim is presumptive evidence of the amount of the insured's liability on the underlying claim." *Nat'l Steel Corp. v. Golden Eagle Ins. Co.,* 121 F.3d 496, 501 (9th Cir.1997) (internal citation omitted). *See also Pruyn v. Agricultural Insurance Co.,* 36 Cal.App.4th 500, 527, 42 Cal. Rptr.2d 295 (1995) ("[A]n insured who has been abandoned by his or her insurer and elects to settle rather than risk an adverse judgment is entitled to an evidentiary presumption, in a subsequent action against the insurer to enforce policy provisions, as to the 'insured's liability on the underlying claim, and the amount of such liability.'"). By failing to defend JV, Ranger became "bound to reimburse [JV] for the full amount of any obligation reasonably incurred by [JV]." *Gray v. Zurich Ins. Co.,* 65 Cal.2d 263, 280, 54 Cal.Rptr. 104, 419 P.2d 168 (1966) (internal quotation omitted). The only remaining question is whether the settlement entered into by JV was "reasonable in the sense that it reflected an informed and good faith effort by [JV] to resolve the claim." *Pruyn,* 36 Cal.App.4th at 527, 42 Cal.Rptr.2d 295.

We therefore remand to the district court for further proceedings consistent with this disposition, including a determination as to the reasonableness of JV's settlement with the County.

**REVERSED AND REMANDED.**