Filed 4/29/14  Certain Underwriters at Lloyd's London v. Mestmaker CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S LONDON,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>THOMAS MESTMAKER, et al.,<br><br>Defendants and Appellants. | F066016<br><br>(Super. Ct. No. S-1500-CV-258541)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  David R. Lampe, Judge.

Thomas Anton & Associates and Gina M. Cervantes for Defendants and Appellants.

Jampol Zimet, Alan R. Jampol, Marcus M. Dong, and Steven J. Markowitz for Plaintiff and Respondent.

-ooOoo-

Certain Underwriters at Lloyd's London (Underwriters) brought this declaratory relief action against its insured on an "Insurance Brokers and Agents Errors & Omissions" policy, Thomas Mestmaker & Associates, Inc. (TMA), and TMA's president, Thomas Mestmaker (Mestmaker) (collectively appellants).  Underwriters sought a

determination that it did not have a duty to continue defending appellants in an underlying lawsuit brought against appellants in a Colorado federal court. This action was stayed pending resolution of the Colorado action, which ultimately was resolved in appellants' favor. Appellants thereafter filed a cross-complaint in this action against Underwriters for bad faith.

Following a court trial on their competing claims, the trial court found for Underwriters in the declaratory relief action, specifically finding that: the policy did not cover the claims in the Colorado action and there was never any potential for coverage under the policy; Underwriters had no obligation to indemnify appellants or provide them a defense; Underwriters properly and timely reserved their rights at the outset of the claim to deny coverage, withdraw the defense and seek restitution of all fees and costs they paid in defense of appellants; and Underwriters was not estopped to assert, and did not waive, their right to seek restitution. The trial court awarded Underwriters all of the amounts it paid to defend appellants in the Colorado action, along with prejudgment interest. The trial court found in Underwriters' favor on the cross-complaint.

On appeal, appellants challenge only the judgment entered on the declaratory relief action. Appellants contend the trial court (1) erroneously determined there was no potential for coverage and therefore no duty to defend, and (2) abused its discretion in determining Underwriters was not estopped from denying coverage. As we shall explain, we agree with the first contention and conclude that Underwriters is only entitled to recover defense costs prospectively. Accordingly, we reverse the judgment on that claim and remand for a determination of the defense costs to which Underwriters is entitled.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2002, Underwriters issued an "Insurance Brokers and Agents Errors & Omissions Insurance" policy to TMA (the policy); the policy was effective from March 15, 2002 to March 15, 2003. As relevant here, the policy states: "The Underwriters will indemnify the Insured for all sums which the Insured shall become

2.

legally obligated to pay as damages by reason of any negligent act, error or omission committed or alleged to have been committed by the Insured or by any person for whose negligent acts, errors or omissions the Insured is legally responsible which arise out of the conduct of the Insured's professional activities as Insurance Brokers, Insurance Agents or General Insurance Agents...."

In May 2002, AdvantEdge Business Group, LLC (AdvantEdge), sued appellants and others in the United States District Court for the District of Colorado seeking injunctive relief and damages based on claims arising out of its purchase of a welfare benefits program administered by Meridian Benefits, Inc. (Meridian). AdvantEdge alleged that appellants and other defendants presented the Meridian welfare benefits program to it and represented throughout the sales process that the Meridian plan was compliant with all applicable laws including ERISA and state insurance laws, included stop-loss coverage and reinsurance, and was fully funded. AdvantEdge also alleged that Meridian in effect acted as an insurer, although it was not licensed as one. In its claim for professional negligence, AdvantEdge alleged appellants breached their professional duties by, among other things, presenting a plan to AdvantEdge that did not include stop-loss or reinsurance coverage, failing to investigate Meridian and the plan's deficiencies and administration, and failing to ensure the plan did not violate state insurance laws and was compliant with the requirements of ERISA (the AdvantEdge lawsuit). The first and second amended complaints filed in the AdvantEdge lawsuit alleged eight causes of action against appellants, including professional negligence and breach of fiduciary duty.

Appellants tendered the AdvantEdge lawsuit to Underwriters for defense and indemnity. Underwriters retained the services of attorney Alan Jampol to represent Underwriters in connection with coverage issues under the policy. After reviewing the policy and first amended complaint, Jampol believed the causes of action for negligence and breach of fiduciary duty were either covered or potentially covered, while the remaining causes of action clearly were not covered. Jampol, however, did not know

3.

enough about the nature of Meridian or the precise nature of the services appellants performed in connection with Meridian's relationship with AdvantEdge to make a final coverage determination. In light of the potential risk of a bad faith finding if Underwriters denied the claim immediately and later were held to have done so wrongfully, Underwriters elected to provide a defense to appellants in the AdvantEdge lawsuit subject to a reservation of rights.

In a July 30, 2002 letter, Jampol advised appellants that Underwriters had accepted the tender of the defense of AdvantEdge's claims subject to the policy's terms, conditions and provisions. The letter stated that the policy did not cover most of the causes of action alleged against appellants in the first amended complaint. The letter further stated that, "[w]hile the reach and scope of the allegations of the First Amended Complaint are not entirely clear," if the claims involved appellants' actions as a managing agent or managing general agent for Meridian or any other involved company, they were excluded from coverage. The letter also stated, in pertinent part, as follows: "Underwriters' acceptance of this tender is also subject to the condition that Underwriters reserve their rights under the policy as follows:

"1. The right to continue to conduct an investigation of coverage and, if they so elect, to ask you for information or conduct an examination under oath pursuant to § 1 under CONDITIONS.

"2. The right to modify their coverage position, to withdraw the defense tendered as herein provided, to deny coverage, and to decline to pay any judgment, award or settlement if additional facts become known to them, either through their own coverage investigation or otherwise, that demonstrate that the claim against you is not covered or if such lack of coverage is determined by a court.

"3. The right to seek a legal determination that the claim is not covered and, if such a determination is made, to withdraw providing a defense and decline to pay any judgment, settlement or award.

4.

"4. The right to seek a reimbursement of any and all sums paid on your behalf by Underwriters, whether in the form of legal defense costs or indemnity, if and to the extent any of the claims against you are not covered. . . ."

Jampol retained the services of Denver attorney Ellis Mayer to defend appellants in the AdvantEdge lawsuit. During the AdvantEdge lawsuit, Mayer and Underwriters repeatedly attempted to settle the claim, but were unsuccessful. On April 6, 2007, the federal district court dismissed the AdvantEdge lawsuit without prejudice for lack of prosecution by AdvantEdge. AdvantEdge appealed to the Tenth Circuit Court of Appeals, which affirmed the judgment of dismissal on January 22, 2009.

On July 29, 2003, the plaintiff in the AdvantEdge lawsuit took Mestmaker's deposition. Jampol did not recall precisely when he received the deposition transcript or reviewed it, but he reviewed it at some point before early 2006. By early 2006, after reviewing the deposition, as well as appellants' written discovery responses in the AdvantEdge lawsuit, Jampol concluded the policy did not cover any of the claims in the AdvantEdge lawsuit. Since the AdvantEdge lawsuit was far along, Jampol decided to have Underwriters continue to defend appellants while seeking a declaration they had no obligation to indemnify or defend appellants.

Underwriters filed this declaratory relief action on July 6, 2006, in which it alleged it had no duty to defend or indemnify appellants because the claim reflected in the complaint in the AdvantEdge lawsuit does not arise out of appellants' performance of professional services as an insurance broker, insurance agent, or insurance general agent and, if appellants were acting as insurance agents, they were doing so as managing general agents. Underwriters sought a declaration that it had no duty to defend or indemnify appellants and restitution for the fees and costs paid to defense counsel on appellants' behalf in defense of the AdvantEdge lawsuit.

In September 2006, the trial court granted appellants' motion to stay the action pending the resolution of the AdvantEdge lawsuit. The stay was not lifted until July

5.

2009, after the AdvantEdge lawsuit concluded. Appellants thereafter filed a cross-complaint against Underwriters for bad faith.

A bench trial commenced on February 6, 2012. Testimony was received from Mestmaker, Jampol and Mayer. It was shown at trial that Meridian was a third-party administrator of ERISA programs with reinsurance, not an insurer or an insurance company, and its plan was not insurance, but instead was an ERISA-compliant self-funded health care plan. According to Mestmaker, appellants were both "consulting" with Meridian and were "consulting agent[s]" for Meridian. Mestmaker had a broker's license in California, but was not a licensed broker in Colorado. Appellants solicited brokers to market the Meridian plan.

After testimony concluded, the parties submitted post-trial briefs and presented closing arguments to the trial court. The trial court thereafter issued a tentative decision finding in Underwriters' favor on the complaint and against appellants on the cross-complaint. Appellants requested a statement of decision.

The trial court subsequently issued a statement of decision, in which it made factual findings and legal conclusions. As pertinent here, the trial court found that (1) there was no coverage under the policy for the claims asserted in the AdvantEdge lawsuit because appellants were not transacting insurance with an insurer, as Meridian was not an insurer and its product was not insurance, (2) there was never a potential for coverage of the AdvantEdge lawsuit because it was undisputed that appellants were not acting as insurance brokers or insurance agents and, since Meridian was not an insurer, they were not transacting insurance, and (3) Underwriters did not waive and were not estopped to deny coverage or seek restitution of defense fees incurred in the AdvantEdge lawsuit. The trial court found that Underwriters was entitled to recover defense costs and prejudgment interest.

Judgment was entered in Underwriters' favor in the total amount of $235,958.98, comprised of $142,557.50 in principal and $89,103.78 in interest through March 9, 2012

6.

and $4,297.70 in interest from March 9, 2012 through June 27, 2012. Underwriters' was awarded its costs of suit.

## DISCUSSION

Appellants present two issues for our determination: (1) whether the trial court erred in finding there was no coverable claim and no duty to defend; and (2) whether the trial court abused its discretion in finding Underwriters was not estopped from denying coverage.

We begin with the coverage issue. The interpretation of an insurance policy is a pure question of law. (*Waller v. Truck Ins. Exchange* (1995) 11 Cal.4th 1, 18 (*Waller*); *Dolan-King v. Rancho Santa Fe Assn.* (2000) 81 Cal.App.4th 965, 974.) When interpreting an insurance policy, the court reviews the policy's terms under the ordinary rules of contract interpretation. (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264 (*Bank of the West*).) Accordingly, if the policy language is clear and explicit, it governs. (*Ibid.*) If the policy terms are in any respect ambiguous or uncertain, the court must attempt to determine whether coverage is consistent with the insured's objectively reasonable expectations. (*Bank of the West*, *supra*, 2 Cal.4th at p. 1265.) If this does not resolve the ambiguity, it must be resolved against the insurer. (*Ibid.*)

The words used must be interpreted according to the plain meaning a layman would ordinarily attach to them. (*Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 807.) "Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists." (*Ibid.*) Moreover, the language must be interpreted in the context of the policy as a whole, and in the circumstances of that case. It cannot be found to be ambiguous in the abstract. (*Bank of the West*, *supra*, 2 Cal.4th at p. 1265.)

Here, the policy provides indemnity for damages the insured becomes legally obligated to pay as a result of any "negligent act, error or omission" committed by the insured "which arise[s] out of the conduct of the Insured's professional activities as Insurance Brokers, Insurance Agents, or General Insurance Agents." The trial court

7.

found the claims asserted in the AdvantEdge lawsuit were not covered by the policy because they did not arise out of appellants' professional activities as insurance brokers, insurance agents, or general insurance agents, since Meridian was not an insurer, its product was not insurance, and appellants were not transacting insurance with an insurer when they acted as a consulting agent for Meridian.

We agree with Underwriters that the insuring provision is not ambiguous and therefore is applied according to its plain meaning. (*Bank of the West*, *supra*, 2 Cal.4th at p. 1264.) Appellants assert the terms "Insurance Brokers," "Insurance Agents" and "General Insurance Agents" are ambiguous, but fail to explain the ambiguity. While these terms are not defined in the policy, they are defined in the Insurance Code. "Insurance" is defined as "a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event" (§ 22);[1] section 23 provides that "[t]he person who undertakes to indemnify another by insurance is the insurer, and the person indemnified is the insured"; "Insurance agent" is defined as "a person authorized, by and on behalf of an insurer, to transact all classes of insurance other than life, disability, or health insurance, on behalf of an admitted insurance company" (§ 31); "Insurance broker" is defined as "a person who, for compensation and on behalf of another person, transacts insurance other than life, disability, or health with, but not on behalf of, an insurer" (§ 33); and section 35 defines "transact" as applied to insurance as "(a) Solicitation," "(b) Negotiations preliminary to execution," "(c) Execution of a contract of insurance," and "(d) Transaction of matters subsequent to execution of the contract and arising out of it."

The policy's meaning is evident on its face. It is an "Insurance Brokers and Agents Errors and Omissions" policy designed to cover the insured's activities as an insurance broker or insurance agent. All of the potentially covered activities of an

---

[1] Undesignated statutory references are to the Insurance Code.

insurance broker or insurance agent under the policy must involve the transaction of insurance, as noted in the statutory definitions. An insurance broker or agent transacts insurance by soliciting, negotiating and executing contracts of insurance, and handling matters arising from the contract subsequent to its execution.

It is undisputed that, based on the facts developed during the underlying lawsuit and trial in this action, appellants' activities upon which the AdvantEdge lawsuit is based did not involve the transaction of insurance. Appellants do not contend otherwise. Instead, they argue there is a question of whether they understood the policy terms excluded ERISA plans. But the policy is clear that it only covers activities involving insurance. The issue here is not whether the Meridian plan is an ERISA plan, but that the plan is not insurance and Meridian is not an insurance company. The claims against appellants in the AdvantEdge lawsuit, which arise from the marketing and sale of a product that is not insurance, are simply not covered by the policy.

The trial court also found there was never any potential for coverage under the policy. Since the duty to defend is broader than the duty to indemnify, that there ultimately proved to be no coverage for the claims asserted in the AdvantEdge lawsuit does not dispose of this question. As summarized by our Supreme Court, "[a]n insurer must defend its insured against claims that create a *potential* for indemnity under the policy. [Citations.] The duty to defend is broader than the duty to indemnify, and it may apply even in an action where no damages are ultimately awarded. [Citation.] [¶] Determination of the duty to defend depends, in the first instance, on a comparison between the allegations of the complaint and the terms of the policy. [Citation.] But the duty also exists where extrinsic facts known to the insurer suggest that the claim may be covered. [Citation.] Moreover, that the precise causes of action pled by the third-party complaint may fall outside policy coverage does not excuse the duty to defend where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could

9.

fairly be amended to state a covered liability." (*Scottsdale Ins. Co. v. MV Transportation* (2005) 36 Cal.4th 643, 654 (*Scottsdale*).)

"The defense duty arises upon tender of a potentially covered claim and lasts until the underlying lawsuit is concluded, or until it has been shown that there is no potential for coverage. [Citation.] When the duty, having arisen, is extinguished by a showing that no claim can in fact be covered, 'it is extinguished only prospectively and not retroactively.'" (*Scottsdale*, *supra*, 36 Cal.4th at p. 655, citing *Buss v. Superior Court* (1997) 16 Cal.4th 35, 46 (*Buss*).) As explained in *Buss*, "before, the insurer *had a duty to defend*; after, it does not have a duty to defend *further*." (*Scottsdale, supra,* 36 Cal.4th at p. 657.)

"On the other hand, 'in an action wherein none of the claims is even potentially covered because it does not even possibly embrace any triggering harm of the specified sort within the policy period caused by an included occurrence, the insurer does not have a duty to defend. [Citation.] "This freedom is implied in the policy's language. It rests on the fact that the insurer has not been paid premiums by the insured for [such] a defense. . . . [T]he duty to defend is contractual. 'The insurer has not contracted to pay defense costs' for claims that are not even potentially covered."'" (*Scottsdale*, *supra*, 36 Cal.4th at p. 655.)

The Supreme Court distilled these principles as follows: "If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, *suggest a claim potentially covered by the policy,* the insurer's duty to defend arises and is not extinguished until the insurer *negates all facts suggesting potential coverage*. On the other hand, if, as a matter of law, neither the complaint nor the known extrinsic facts indicate any basis for potential coverage, the duty to defend does not arise in the first instance." (*Scottsdale*, *supra*, 36 Cal.4th at p. 655, italics added.)

"Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." (*Montrose Chemical Corp. v. Superior Court* (1993)

6 Cal.4th 287, 299–300 (*Montrose*).)  A court may conclude that no duty to defend exists only where the underlying complaint "'*can by no conceivable theory raise a single issue which would bring it within the policy coverage.*'"  (*Ibid.*, quoting *Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275, fn. 15, italics added in *Montrose*.)  "Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages . . . will fall within the scope of coverage, therefore add no weight to the scales."  (*Montrose, supra,* at p. 300.)

"""If a duty to defend arises, the insurer must defend the action in its entirety, including claims that are not potentially covered."""  (*Sprinkles v. Associated Indemnity Corp.* (2010) 188 Cal.App.4th 69, 77; see also *Crawford v. Weather Shield Mfg., Inc.* (2008) 44 Cal.4th 541, 547 ["'The [insurer's] defense duty is a continuing one, arising on tender of defense and lasting until the underlying lawsuit is concluded [citation], or until it has been shown that there is *no* potential for coverage....'"].)  But in defending so-called "mixed" third party actions, in which some of the claims are at least potentially covered and others are not, the insurer is entitled, under a reservation of rights, to recoup its costs of defense attributable to the claims for which there was no potential for coverage.  (*Scottsdale*, *supra*, 36 Cal.4th at p. 658.)

Until either the third party litigation ends or the insurer "proves, by facts subsequently developed, that the potential for coverage which previously appeared cannot possibly materialize, or no longer exists[,] [t]he insurer must absorb all costs it expended on behalf of its insured while the duty to defend was in effect – i.e., before the insurer established that the duty had *ended*."  (*Scottsdale*, *supra*, 36 Cal.4th at p. 657.)

But when the "third party suit never presented any potential for policy coverage, the duty to defend does not arise in the first instance, and the insurer may properly deny a defense."  (*Scottsdale*, *supra*, 36 Cal.4th at p. 657.)  Moreover, "*subsequent* case law can establish, in hindsight, that no duty to defend ever existed.  'If the terms of the policy provide no potential for coverage, . . . the insurer acts properly in denying a defense *even*

11.

*if that duty is later evaluated under case law that did not exist at the time of the defense tender.*'" (*Id.* at pp. 657-658, original italics.) Our Supreme Court held in *Scottsdale* that these principles also apply where "the insurer does not deny a defense at the outset, but instead elects to provide one under a reservation of its right to reimbursement. By law applied in hindsight, courts can determine that no potential for coverage, and thus no duty to defend, ever existed. If that conclusion is reached, the insurer, having reserved its right, may recover from its insured the costs it expended to provide a defense which, under its contract of insurance, it was never obliged to furnish." (*Id.* at p. 658.)

Here, the trial court found Underwriters was entitled to recover its defense costs from the beginning of its defense of appellants in the AdvantEdge lawsuit because, based on facts developed during the lawsuit, there was never any potential for coverage of any claims asserted therein. Whether the trial court was correct depends on whether there was a potential for coverage when appellants first tendered the AdvantEdge lawsuit to Underwriters. If there was not a potentially covered claim at that time, then Underwriters is entitled to recoup all defense costs expended on appellants' behalf, but if a potential for coverage on at least one claim existed, then Underwriters is entitled to recover only costs expended defending those claims that were not potentially covered from the inception of the AdvantEdge lawsuit and costs expended on the potentially covered claims from the inception of this declaratory relief action.

Underwriters concedes that there was a potential for coverage under the policy when the AdvantEdge lawsuit was first tendered based on the allegations in the first amended complaint. Underwriters admits in their respondent's brief that, "[a]t the outset of the AdvantEdge Lawsuit, the negligence allegations appeared to be at least potentially covered; however, Underwriters, at the time of the reservation o[f] rights letter, did not have a complete picture of Appellants' role with respect to the Meridian Plan." Jampol testified to as much at trial, when he explained that the claims for negligence and breach of fiduciary duty "certainly had a potential for coverage based on the first-amended

12.

complaint." Appellants assert that, if the allegations in the first amended complaint were taken as true, there was a potential for coverage, as they were either agents or brokers of Meridian who were transacting insurance.

Underwriters nevertheless asserts the trial court correctly found it is entitled to recover all of its defense costs because the facts Jampol discovered *after* Underwriters agreed to provide a defense showed there was never any potential for coverage. Pointing to the facts developed during the course of the AdvantEdge lawsuit and this action which show that appellants were acting as marketing or consulting agents for Meridian, Meridian was not an insurer, and the Meridian plan was not an insurance product, Underwriters argue there was never any potential for coverage because appellants were never transacting insurance. Underwriters assert that because they did not know the true nature of appellants' relationship to Meridian until the AdvantEdge lawsuit was far along and they reserved their rights, under *Scottsdale* they could seek to recoup their fees because no potential for coverage ever existed.

*Scottsdale* does not hold, as Underwriters suggest, that an insurer may recoup all of its defense costs where, as here, the insurer undertakes the defense of a claim that is potentially covered based on the factual allegations in the complaint and subsequently discovers facts that show there never was a potential for coverage. Such a holding would fly in the face of the "well-established precepts of insurance coverage" by which the insurer has a duty to defend even "claims that are 'groundless, false, or fraudulent.'" (*Waller*, *supra*, 11 Cal.4th at p. 19.) While it may be true, as Underwriters asserts, that it was "*always* the case" that appellants were marketing agents and the Meridian plan was not insurance, Underwriters did not discover those facts until after it found a potential for coverage based on facts alleged in the AdvantEdge complaint. Accordingly, this case is like those described in *Tamrac, Inc. v. California Ins. Guarantee Assn.* (1998) 63 Cal.App.4th 751 (*Tamrac*) "where there was *factually* a potential for coverage which imposed the duty to defend, and the insurer subsequently developed *facts* showing there

13.

was no duty in the particular circumstances.  In those situations[,] the insurer's duty to defend ceases prospectively from the subsequent determination but not retroactively to the beginning."  (*Id.* at p. 758, original italics.)

What *Scottsdale* does hold is that when a third party action never presented any possibility of coverage as a matter of law, the duty to defend never arose and an insurer who defends the insured under its reservation of rights may recover amounts expended retroactively in that defense.  (*Scottsdale*, *supra*, 36 Cal.4th at p. 649.)  Thus, in *Scottsdale*, there was never a duty to defend as a matter of law where it was ultimately determined under a California Supreme Court case decided during the pendency of the insurer's declaratory relief action that there was no potential coverage for facts alleged in the underlying complaint.  (*Scottsdale*, *supra*, 36 Cal.4th at pp. 652-653.)  Similarly, in *Tamrac*, there was never a potential for coverage nor a duty to defend where the California Supreme Court issued a decision during the pendency of a coverage dispute over whether a workers' compensation insurance carrier has a duty to defend a civil suit that resolved the legal issue in the insurer's favor.  (*Tamrac*, *supra*, 63 Cal.App.4th at pp. 752-753.)  In that case, the only potential for coverage turned on a legal question, not a factual issue.  (*Id.* at p. 758.)

The present case, however, does not present a situation where an intervening legal decision resulted in there never being a potential for coverage and therefore never a duty to defend.  Instead, the facts alleged in the first amended complaint created a duty to defend.  It was only when Underwriters discovered the "true" facts that the potential for coverage ended.  Underwriters' duty to defend was not extinguished until Underwriters negated all facts suggesting potential coverage, which it did here by proving that the Meridian plan was not insurance and therefore appellants' activities in relation to it were not covered under the policy.

We agree with Underwriters that the case it relies on, *Saylin v. California Ins. Guarantee Ass'n* (1986) 179 Cal.App.3d 256 (*Saylin*), is almost precisely on point, but

disagree as to its import. As our Supreme Court described that decision in *Montrose*, *supra*, 6 Cal.4th at p. 296, in *Saylin*, "the third party complaint alleged that the insured committed tortious acts within the policy period. However, discovery revealed undisputedly that the insured had in fact done nothing concerning the third party while the policy was in force. The Court of Appeal noted that had the insurer known these facts at the outset of the litigation, it would have been justified in denying a defense. Citing [*State Farm Mut. Auto. Ins. Co. v.*] *Flynt* [(1971) 17 Cal.App.3d 538], the court held that the California Insurance Guarantee Association [(CIGA)], on behalf of the insolvent insurer, had a duty to determine independently whether the third party claim was covered, and properly denied a defense on ascertaining the facts. (*Saylin*[,] *supra*, 179 Cal.App.3d at p. 264.)."

Significantly, *Saylin* did not hold, or even discuss, whether the insurer or CIGA was entitled to recover defense costs retroactively. It held only that after CIGA acquired the insolvent insurer's obligations, it could independently determine there was no coverage based on facts developed during the underlying litigation and withdraw from defending the insured. (*Saylin*, *supra*, 179 Cal.App.3d at pp. 260, 264.) Underwriters urges us to find that their ignorance of the facts when appellants tendered the defense did not create a potential for coverage. But *Saylin* shows that a duty to defend arises when the complaint alleges potentially covered conduct and the insurer is unaware of facts that show no potential for coverage; in that situation, the duty to defend is not extinguished until the insurer learns of facts that prove there is no coverage.

In deciding that there was never a potential for coverage in this case, the trial court noted that "[a] potential for coverage means that coverage depends upon the resolution [of] a disputed material fact by the jury in the underlying action[,]" citing *Tamrac*, *supra*, 63 Cal.App.4th at p. 758. On appeal, Underwriters argues that because "[t]here were no facts which could be developed or decided by the trier of fact in the AdvantEdge Lawsuit

15.

which would determine the existence of coverage," a determination of non-coverage does not operate only prospectively, citing *Scottsdale* and that Court's reliance on *Tamrac*.

These cases, however, do not support Underwriters' assertion.[2]  In *Tamrac*, the appellate court concluded that *because* insurance coverage and the costs and duties of defense were not issues that would be determined in the underlying case, a dispute between the insured and insurer over the duty to defend could be determined after the underlying suit was finished, and where the potential for coverage turned on the resolution of a legal, not a factual, question, the insurer could recover all of its defense costs retroactively.  (*Tamrac*, *supra*, 63 Cal.App.4th at p. 758.)  The Court in *Scottsdale* cited *Tamrac* for its rejection of the insured's argument "that a determination of noncoverage operates prospectively only[,]" quoting *Tamrac*'s distinction between cases where there was factually a potential for coverage and the insurer subsequently developed facts showing there was no duty to defend, which terminates the duty to defend only

---

[2] It appears that Underwriters' assertion arises from the principle that it may be necessary to stay an insurer's declaratory relief action on the issue of the duty to defend until the resolution of the underlying litigation.  As explained in *Montrose*: "[T]o eliminate the risk of inconsistent factual determinations that could prejudice the insured, a stay of the declaratory relief action pending resolution of the third party suit is appropriate when the coverage question turns on facts to be litigated in the underlying action. [Citations.]  For example, when the third party seeks damages on account of the insured's negligence, and the insurer seeks to avoid providing a defense by arguing that its insured harmed the third party by intentional conduct, the potential that the insurer's proof will prejudice its insured in the underlying litigation is obvious.  This is the classic situation in which the declaratory relief action should be stayed.  By contrast, when the coverage question is logically unrelated to the issues of consequence in the underlying case, the declaratory relief action may properly proceed to judgment.  An illustration of this latter sort of case is found in *Flynt*, *supra*, 17 Cal.App.3d 538.  There, the question whether the owner had granted permission for the driver's use of the car was irrelevant to the third party's personal injury claim, and could properly be determined in the declaratory relief action independently of the timing of the third party suit." (*Montrose*, *supra*, 6 Cal.4th at pp. 301-302.)  Since the present declaratory action was stayed pending resolution of the AdvantEdge lawsuit, it is irrelevant whether the factual issue here also arose in that lawsuit.

prospectively, and those where, as a matter of law, there was never a potential for coverage, which allows the insurer to recoup all of its defense costs. (*Scottsdale*, *supra*, 36 Cal.4th at p. 661.) Neither case held that a potential for coverage is determined by whether there are disputed material facts that the jury must resolve in the underlying action. Instead, as we have explained, these cases support our conclusion here, namely that the potential for coverage turned on a factual, not a legal, question that terminated Underwriters' duty to defend only prospectively.

Our conclusion renders it unnecessary to address appellants' alternate claim that Underwriters is estopped from denying coverage if it knew there was no coverage when it first accepted defense of the AdvantEdge lawsuit. "An insurer can be estopped from raising coverage defenses if, knowing of the grounds of noncoverage, it provides a defense under the policy *without a reservation of rights*, and the insured reasonably relies on this apparently unconditional defense to his detriment. (*Miller v. Elite Ins. Co.* [(1980)] 100 Cal.App.3d 739[,] 754-755 [(*Miller*)].)" (*State Farm Fire & Casualty Co. v. Jioras* (1994) 24 Cal.App.4th 1619, 1626, italics added.) We note, however, that there generally can be no estoppel where, as in this case, the insurer accepts defense under a reservation of rights. (*Miller*, *supra*, 100 Cal.App.3d at p. 755.) Moreover, the trial court specifically found that Jampol did not know the facts that ultimately would determine no coverage existed when Underwriters elected to provide a defense.

In sum, there was a potential for coverage of the negligence claims when the AdvantEdge lawsuit was first tendered to Underwriter based on the facts alleged in the first amended complaint. That potential was not extinguished until Underwriters proved in this litigation that there was no coverage. Accordingly, Underwriters is entitled to recover all of the costs paid in defense of all claims except for the professional negligence and breach of fiduciary duty claims to the extent such costs can be allocated, and to recover defense costs on the negligence claims from the inception of *this* lawsuit until the final resolution of the AdvantEdge lawsuit.

17.

**<u>DISPOSITION</u>**

The judgment in favor of Underwriters and against appellants is reversed.  The matter is remanded for a determination of the defense costs to which Underwriters is entitled consistent with this decision.  Costs on appeal are awarded to appellants.

_____
                  Gomes, J.

WE CONCUR:

_____
Cornell, Acting P.J.

_____
Peña, J.

18.